Brian James EDMISON, Appellant,

v.

Betsy Robin CLARKE, Respondent.

No. WD 59410.

Missouri Court of Appeals,
Western District.

Nov. 27, 2001.

Steve Scott, Columbia, for appellant.

Leslie Mayberry Schneider, Columbia, for respondent.

RONALD R. HOLLIGER, Judge.

This is the second appeal arising from the same paternity action filed by appellant Brian Edmison (Father) against respondent Betsy Clarke (Mother). In the original action, Mother filed a cross-petition seeking determination of paternity, together with an award of custody and child support. The first judgment in this matter (Judgment # 1) was entered on March 17, 1998. That judgment found that Brian Edmison was the father of the minor child, and awarded legal and physical custody to Mother. Father was awarded "reasonable visitation" privileges, but Judgment # 1 did not set out any specific schedule. Judgment # 1 also ordered Father to pay child support in the amount of $551 per month, retroactive to the date Mother moved out of the house the parties had been sharing, August 12, 1997. Father appealed portions of this first judgment. *Edmison ex rel. Edmison v. Clarke*, 988 S.W.2d 604 (Mo.App.1999) (hereinafter *Edmison I*). Specifically, he challenged the trial court's award of custody, the failure of the judgment to set out a specific visitation schedule, and the calculation of child support on two grounds. He also challenged the retroactivity portion of the judgment, contending that the trial court erred in making the child support retroactive to a date prior to service of the paternity petition on Father. Father did not appeal the trial court's finding of paternity.

In *Edmison I*, we held that the trial court erred in making its custody determinations without taking into consideration certain statutory factors. Our opinion also held that the trial court erred in adopting Mother's proposed Form 14 child support calculations due to errors contained within those calculations. Lastly, this court held that the trial court erred in setting a beginning date for Father's retroactive child support obligation earlier than that authorized by statute. Judgment # 1 was reversed for new trial on the custody issues, for recalculation of the parties' child support obligations, and redetermination of the proper beginning date of Father's child support obligation.

Prior to retrial, the original trial judge, Judge Horner, retired. Thus, proceedings at the second trial were held before Judge Holt. After retrial of the issues, the trial court issued a new judgment that was subsequently modified upon consideration of the parties' post trial motions. That judgment (Judgment # 2), entered November 16, 1999, granted the parties joint legal and physical custody of the child, alternating every six months. When the child was in the custody of Mother, Father was ordered to pay child support in the amount of $450 per month. During those periods when Father had custody of the child, Mother was ordered to pay $446 per month in child support. Judgment # 2 made no mention of Judgment # 1 or of our opinion in *Edmison I* and the directions contained in our mandate. Judgment # 2 was silent on the issue of child support during either the period between the date of service of the original paternity action and the period between Judgment # 1 and Judgment # 2. No appeal was taken from Judgment # 2 by either party, and Father claims the judgment became final 30 days after its entry.

On June 20, 2000, Mother (now represented by new counsel) filed a "Motion to Determine Child Support Arrearage" with the trial court. This motion recited and relied upon the child support award in Judgment # 1 in claiming past-due child support. Father subsequently replied to this motion, arguing that the child support award in Judgment # 1 had been vacated and no retroactive child support had been awarded in Judgment # 2. Father also filed a cross-motion alleging that Mother had failed to make any child support payments required under Judgment # 2. Mother replied, contending that she had not paid any child support under a belief that she had a credit balance due to Father's unpaid retroactive child support. Mother also argued that the trial court could reopen Judgment # 2 under Rule 74.06, which concerns motions for relief from judgment. While the cross-motions for child support were pending, Mother began making child support payments.

On November 2, 2000, the trial court entered a third judgment (Judgment # 3) regarding the issue of child support arrearages. This judgment had several components. First, the trial court found that Father owed a child support arrearage of $12,673 ($551 per month from October 1997 (date of service of paternity petition) through September 1999). The trial court found that Father had paid all child support due after September 1999[1] through October 2000. It then found that Mother had failed to pay Father $1,999 in required child support under Judgment # 2. The trial court credited the amount owed by Mother against Father's arrearage, finding that a remaining arrearage of $10,674 was owed by him. The trial court then ordered Father to make payments on the arrearage in the amount of $225 per month beginning December 1, 2000. The record on appeal contains no part of the proceedings that led to Judgment # 2 other than the judgment itself.

Father subsequently timely filed his notice of appeal from Judgment # 3.

### STANDARD OF REVIEW

■ Both of Father's points on appeal are governed by the standard of review of *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976). We are not to reverse the trial court's judgment unless it is not supported by substantial evidence, the judgment is against the weight of the evidence, the trial court erroneously declared the law, or erroneously applied the law. *Id.* at 32.

### ISSUES ON APPEAL

Father raises two issues in the present appeal. He first argues that the trial court erred in awarding retroactive child support in Judgment # 3 because the reversal of Judgment # 1 on appeal rendered the earlier judgment a nullity and Mother failed to relitigate the issue on retrial. As Mother failed to appeal Judgment # 2, Father argues that Mother was precluded from reopening the judgment for a determination of retroactive child support. For his second point on appeal, Father argues that Judgment # 2 contained no award of retroactive child support and when it became final it was the law of the case as to whether he owed any back child support. As Father was current upon his obligations under Judgment # 2, he argues that the trial court erred in

---

1. Although this predates the November 16, 1999, judgment (# 2) the court had issued a judgment in the Summer of 1999 that it modified in November pursuant to timely filed post-trial motions. Apparently the parties complied with the provisions of the interlocutory summer 1999 judgment at least as to some provisions.

finding that he owed an arrearage for unpaid retroactive child support.

### ANALYSIS

As outlined above, after entry of the first judgment in this matter, some, but not all, of the issues decided by that judgment were appealed by Father. Specifically, Father appealed the custody and support determinations made by the trial court, but he did not challenge the trial court's findings with regard to paternity. This court in its prior opinion reversed this first judgment regarding the trial court's custody determination, its child support calculations, and the starting date of Father's retroactive child support obligation. That opinion did not expressly reverse the trial court's determination that Father was properly responsible for retroactive child support. The cause was then remanded for retrial upon those issues that had been reversed.

The focus of Father's first point on appeal is his claim that the reversal of Judgment # 1 operated to render that judgment a complete nullity. As such, Father claims, any finding from Judgment # 1 that he should be held liable for retroactive child support[2] could not be relied upon by Mother or the trial court in the proceedings after appeal.

Father's second point on appeal is inextricably tied to his first point on appeal. The essence of this point on appeal is Father's claim that the trial court erred in its calculation of child support arrearages by including amounts for Father's unpaid obligations under the award of retroactive child support. Father takes the position that, absent the inclusion of such amounts, he was current in his child support obligations at the time of Judgment # 3 and that Mother owed *him* an arrearage.

Mother takes the position that the trial court's finding in Judgment # 1 that Father should be held liable for retroactive child support was not disturbed on appeal.[3] She claims that the determination of this issue has become part of the law of the case. It is her contention that the only jurisdiction remaining to the trial court at the time of Judgment # 2, regarding retroactive child support, was to fix a date for the beginning of the retroactive period that was authorized by statute. Mother's argument in this respect ignores the specific direction that upon remand the court was to recalculate the amount of support according to the directions of *Edmison I*, not just set a new effective date for the support obligation.[4]

Ultimately, the parties' arguments ask this court to inquire as to the effect of the reversal of Judgment # 1 upon the disputed issues in the case at bar. Our investigation, then, should begin with that inquiry, which is complicated by the fact that certain issues (*e.g.,* the paternity finding) decided by Judgment # 1 were not appealed by the parties.

Father takes the position that the reversal of Judgment # 1 rendered that judgment a complete nullity, citing generally to

---

2. Father seems to make no distinction in his argument between child support awarded retroactively from the paternity judgment (# 1) and the child support awarded prospectively in that judgment. He clearly did not appeal the award of the prospective support except as to calculation errors discussed in *Edmison I*. Because of our analysis, we need not consider the import of his failure to make that distinction.

3. Mother likewise fails to make the distinction described in note. 2.

4. Although Mother does concede that the trial court erred in using the $551 per month figure that had been set aside by *Edmison I*.

*5 Am.Jur.2d,* Appellate Review § 861 (1995). Father is correct that this section comments that a "complete reversal generally annuls the judgment below," which is the rule across most, if not all, jurisdictions. Relying on this premise, Father argues that the reversal of Judgment # 1 voided *all* of the determinations of that judgment, including the apparently unappealed determination that retroactive child support was to be paid by Father. If Father is correct, however, this would also entail that the portion of the judgment finding Father to be the father of the child would also be annulled. Neither Judgment # 2 nor Judgment # 3 purports to make a finding of paternity, nor, as will be discussed later, incorporates that prior finding by reference. As a result, Father's approach would entail the eventual conclusion that neither Judgment # 2 nor Judgment # 3 would be a final judgment, because neither disposes of all of the issues presented in the paternity petition. Our only choice under that argument would be to dismiss the appeal due to the lack of an appealable final judgment.

■ Father's position is logically and legally untenable. If an issue is neither appealed by a party nor reviewed by the appellate court, it would seem odd that a reversal on other issues could nullify the trial court's determination of the unappealed issue, unless that issue was somehow directly related to the issues on appeal. This is the view taken by commentators on the issue. In situations where there is a reversal after appeal, where not all appealable issues were appealed, "[a] reversal of a trial court decision . . . . affects only the lower court issues that were appealed from, so long as, on appeal, these points were severable from the nonappealed issues, and it is an adjudication of only the matters expressly discussed and decid-

ed." *Id.* Thus, if there is a severable portion of the judgment which is not appealed by the parties, a reversal of the case on the issues actually presented on appeal would not disturb or affect those other, severable, portions of the original judgment from which no appeal was taken.

■ Mother contends that Father appealed only the trial court's findings in Judgment # 1 regarding the *beginning date* of Father's retroactive child support obligation. Thus, in Mother's view, Father did not appeal the threshold issue of whether the trial court properly held that he should be held liable for retroactive child support. While this court reversed the trial court's determination of the date to which child support should be retroactive, Mother argues, we were neither presented with nor took action to disturb the lower court's determination that child support should be awarded retroactively.

A cursory review of this court's file in the first appeal (*Edmison I*) reveals that Mother's argument does not accurately reflect the record in the first appeal. Father's seventh point on appeal in the first appeal was (emphasis added):

> The trial court erred in making child support retroactive to August 12, 1997, because there was no basis in the pleadings, evidence or law for such retroactivity, in that [Mother] did not request retroactive child support, in that the date of August 12, 1997 is prior to the date [Mother] separated from [Father] and is not a date authorized by statute for retroactive child support, and in that the Trial Court did not take into account the hospital bill paid by [Father] for the child's birth.

Father's argument in support of this point in the first appeal was very brief, being only four paragraphs. Nevertheless, it appears that Father was challenging both

the retroactive application of child support as well as the date to which child support should be retroactive. Further, Mother's brief in the first appeal does not take up the issue of the date to which child support should be retroactive. Instead, the brief only discusses the issue of whether a retroactive award was appropriate at all. Clearly, the Father's liability for retroactive child support was raised on appeal and litigated at that stage.

This court's opinion in *Edmison I* did not directly speak to whether the trial court properly awarded retroactive child support in the absence of a request for such relief in Mother's pleadings. Arguably, however, by remanding *only* on the issue of the date to which retroactive support should be calculated, this court presumed that an award of retroactive support was proper in the first instance. To the extent that the issue was decided in the first appeal, it would then become part of the law of the case and binding on the trial court.

■ We must consider whether the issue specifically reversed on appeal, the date to which child support should be retroactive, somehow left open the underlying question of the Father's liability for retroactive child support. Following the lead of the commentators, the question is whether the issue of Father's liability for retroactive child support is truly severable from the issue of the date to which Father's child support should be retroactive. To be severable, these issues must be independent of each other. *Triton Coal Co. v. Husman, Inc.,* 846 P.2d 664, 669 (Wyo. 1993). For guidance, the *Triton* court drew on the following language from *Culbertson v. Cizek,* 225 Cal.App.2d 451, 37 Cal.Rptr. 548 (1964)(which in turn was quoting from an earlier California case, *American Enterprise, Inc. v. Van Winkle,* 39 Cal.2d 210, 246 P.2d 935 (1952)):

The test of whether a portion of a judgment appealed from is so interwoven with its other provisions as to preclude an independent examination of the part challenged by the Appellant is whether the matter or issues embraced therein are the same as, or interdependent upon, the matters or issues which have not been attacked. *Culbertson,* 37 Cal. Rptr. at 559; *American Enterprise,* 246 P.2d at 937–38.

Ultimately, if the two issues are severable, then the court's reversal on one issue does not disturb the issue. Conversely, if the issues are not severable, then a reversal as to one issue entails reopening the second issue.

■ The statutes authorizing retroactive child support in paternity cases are not helpful in determining the relationship between these issues. Section 210.841, RSMo, concerns awards of child support in paternity cases. With regard to retroactivity, the statute states merely that an award for child support may be made retroactive to the date the party paying child support was served with the petition. Section 210.841.7, RSMo. It does not set out criteria for determination of when an award of retroactive support is appropriate, nor does it set out guidelines for assessing the amount of retroactive support to be awarded. The reported cases do not shed much additional light upon whether these two issues are linked. The cases indicate that an award of retroactive child support is discretionary with the trial court. *See Biby v. Jones,* 886 S.W.2d 665, 666 (Mo.App.1994). Beyond that, an award of retroactive child support would seem to rest upon findings similar to those supporting an award of prospective child support: the financial inability of the custodial parent to provide for all of the child's needs and the noncustodial parent's

ability to provide financial assistance in providing for those needs.

 These two issues bear at least some logical relationship with each other. Clearly, a determination that a party is not liable for retroactive child support renders moot the issue of when a party's liability for retroactive support should begin. In other words, if an award of retroactive child support is inappropriate, the issue of the starting date for retroactive child support becomes irrelevant. The reverse, however, does not appear to be true. The determination as to the beginning date of a parent's retroactive child support obligation (whether it is to begin a week, month, or year prior to the judgment date—provided that starting date is authorized by statute) would not appear to impinge upon the determination of whether a finding that retroactive child support was proper. For that reason, we hold that the more sensible position is that this court's reversal of the portion of the lower court's judgment concerning the date to which child support would be retroactive (on the grounds that it was earlier than the date authorized by statute) did not impact or disturb the trial court's ruling that an award of retroactive support was proper in the first place. Implicitly, we also approved that award in *Edmison I* as otherwise there would have been no reason to address the issue of the starting date for retroactive child support. Father filed no motion for rehearing or transfer after the opinion in *Edmison I*. Nor did he ever seek recall of the mandate. Even now he does not contest whether retroactive support should have been awarded but relies only upon his mistaken view of the effect of our reversal and the doctrine of the law of the case.

After retrial and hearing upon the post-trial motions, the trial court entered its second judgment. That judgment made new determinations with regard to custody and prospective child support. This judgment did not recite any findings with regard to the paternity of the child, nor did it make reference to the original judgment's finding of paternity. That judgment, was also silent on the issue of retroactive child support. Thus, that judgment failed to dispose at least one issue in the case—the issue of Father's retroactive child support obligation. Mother argues that on its face, this second judgment failed to resolve all of the issues at contention between the parties and, therefore, it was not a final judgment under Supreme Court Rule 74.01(b).

 We believe that Judgment # 2 lacked finality for a more fundamental reason than advanced by mother. A trial court upon remand can do no more than permitted by the mandate. *Sumnicht v. Sackman*, 968 S.W.2d 171, 174 (Mo.App. 1998). Where the mandate contains express instructions that direct the trial court to take a specified action, the trial court has no authority to deviate from those instructions. *See Boillot v. Conyer*, 887 S.W.2d 761, 763 (Mo.App.1994). Any proceedings in the trial court "contrary to the mandate are null and void." *Id.* Conversely, a trial court also risks error in doing less than the mandate requires. By failing to address all of the issues returned to the trial court upon remand, there is a substantial danger that the resulting judgment will lack finality. Put another way, a trial court's failure to complete its obligation under a mandate may prevent it from exhausting its jurisdiction over the case.

Here, the trial court not only failed to comply with the requirement of the mandate that the period of retroactive child support be redetermined, it also failed to properly recalculate the amount of Father's monthly child support obligation for

the period of retroactive support. The mandate in *Edmison I* clearly directed a recalculation of child support based upon the Form 14 errors discussed within that opinion. We have been furnished no record of the proceedings surrounding Judgment # 2 and the judgment obviously does not on its face indicate any such consideration of the issue of retroactive child support before its own entry. As such, it is clear that Judgment # 2 fails to satisfy our mandate in *Edmison I*.

Nor can we find that the trial court properly corrected that oversight through Judgment # 3, issued upon Mother's motion for determination of child support arrearages. Judgment # 3 makes no reference to the prior judgments or the issues disposed of by those judgments.[5] Further, our record on appeal from that judgment contains no Form 14's or other information which would be necessary to show compliance with our instructions in the mandate in *Edmison I*. Indeed, it appears that Judgment # 3 was not an attempt by the trial court to fill the gaps within Judgment # 1 or Judgment # 2, but rather an attempt to enforce the provisions of those judgments. Specifically, the judgment did more than recalculate the child support arrearages for the period prior to Judgment # 1 or Judgment # 2, it also calculated the arrearages which accrued between Judgment # 2 and Judgment # 3. This, however, was inappropriate, as neither Judgment # 1 nor Judgment # 2 were final judgments from which a child support arrearage could be correctly calculated.

■ There is one other matter to be addressed. Judgment # 2 does not incorporate any of the findings from Judgment # 1 that were not reversed in *Edmison I*. Particularly absent is the determination of

paternity that was not at issue in the first appeal. The better and preferred practice is that upon remand after appeal the new judgment include explicitly or at least by reference that there has been a prior judgment that was reversed only in part. Although perhaps not a direct application of the "single judgment rule" (which holds that a second judgment is void if the first is not set aside), there are many good reasons why the practice we suggest is followed by many judges and should be by others. First of all, it is convenient to the parties, and particularly in domestic matters, to have one document that purports to be the judgment affecting their relationship. Secondly, it helps avoid problems created by piecemeal judgments in determining whether a final judgment has been entered.

For the reasons stated, the appealed judgment (# 3) is reversed and remanded with the following instructions. In accordance with our mandate and directions in *Edmison I* the trial court should first recalculate the child support, taking into consideration the child care tax credit and health insurance payments as directed in *Edmison I*, for the period from service of the paternity petition until the date payments were to begin under Judgment # 2. In making this calculation, the trial court may make adjustments for any support paid during that time and for the apparent custodial changes that began several months before the formal entry of Judgment # 2. The trial court should in this new judgment incorporate those necessary portions of Judgment # 1 and Judgment # 2 explicitly or by reference. The new judgment may then also include a determination of any arrearages that result.

5. We observe, however, that the trial court apparently relied upon the monthly child support amount calculated by the trial court in its first judgment. That calculation and its result was one of the express grounds upon which the first judgment was reversed.

EDWIN H. SMITH, Presiding Judge, and VICTOR C. HOWARD, Judge, concur.