Larry ABT, Claimant/Appellant

v.

MISSISSIPPI LIME COMPANY,
Employer/Respondent,

and

Treasurer of Missouri as Custodian of
the Second Injury Fund, Additional
Party/Respondent.

No. ED 99779.

Missouri Court of Appeals,
Eastern District,
Division Two.

Feb. 18, 2014.

Robert J. Lenze, St. Louis, MO, for appellant.

Matthew M. Mocherman, Gregg N. Johnson, Cape Girardeau, MO, for respondents.

LAWRENCE E. MOONEY, Presiding Judge.

The claimant, Larry Abt, appeals the final award of the Labor and Industrial Relations Commission denying him permanent total disability (PTD) benefits and reimbursement for certain past medical expenses. The Commission determined that the claimant suffered only permanent partial disability as a result of his primary work injuries combined with his preexisting disabilities, and awarded benefits accordingly against the employer, Mississippi Lime Company, and the Second Injury Fund.[1] In addition, the Commission awarded the claimant reimbursement for some of his past medical expenses, but denied reimbursement for certain other expenses.

---

1. The Second Injury Fund separately appealed the Commission's final award of permanent partial disability benefits in case number ED99794. We have, however, granted the Fund's motion to dismiss its appeal in light of our Supreme Court's recent opinion in *Treasurer of the State of Missouri v. Witte*, 414 S.W.3d 455 (Mo. banc 2013).

This is the second award rendered by the Commission in this case, which stems from the claimant's January 2001 injuries, and the second appeal of the Commission's award to this Court. The issue of *whether* the claimant suffered permanent total disability was conclusively decided in the Commission's first award in this case, and that determination was not appealed by any party in the original appeal, *Abt v. Mississippi Lime Co.*, 388 S.W.3d 571 (Mo.App.E.D.2012) (*"Abt I"*). Consequently, the fact that the claimant is permanently totally disabled has become the law of the case. The Commission was not free in its second award to attempt to circumvent that unchallenged determination by finding that the only possible cause of the claimant's permanent total disability supported by substantial and competent evidence—the combination of the 2001 injuries and the claimant's pre-existing conditions—resulted only in permanent partial disability.

We borrow much of the description of the facts and the medical evidence from *Abt I* without further citation. On January 16, 2001, the claimant was using a locomotive to transport rail cars between a loading area and a rail yard. Consistent with his usual practice, the claimant stood on the side of the locomotive while he drove it, and checked behind him to ensure that he did not derail the cars he was transporting. When the claimant looked forward again, he saw a truck stopped on the railroad tracks in the locomotive's path. The claimant was unable to stop the locomotive before it collided with the truck. On impact, the claimant struck the locomotive, rolled off of it, and struck the truck before landing on the ground. As a result of the accident, the claimant sustained a degloving injury to his left calf that doctors repaired with surgery, injuries to his lower back, and fractured ribs (collectively the "primary injuries"). In a degloving injury, a section of skin is torn from the underlying tissue. The claimant returned to work for the employer in May 2001. After being hospitalized in 2005 with severe left leg swelling and cellulitis, the claimant quit working in December 2005, having been advised to do so by his primary-care physician. The claimant has not worked since that time. The claimant filed a claim for workers' compensation benefits, and in 2011, an Administrative Law Judge (ALJ) held a hearing on the claim.

It is undisputed that the claimant sustained an accident during the course of his employment in January 2001, and that the claimant's injuries are medically causally related to the January 2001 work injury. The ALJ identified three issues for hearing for a final award: 1) previously incurred medical aid; 2) the nature and extent of disability; and 3) liability of the Second Injury Fund.

At the hearing, the claimant and his wife testified, and the claimant introduced various medical records dated before and after the primary injuries. In addition to records relating to the primary injuries, the claimant introduced records concerning various injuries in 2005 to his spine, ankles, chest, right elbow, and both hands and wrists.

On October 23, 2005, Ste. Genevieve County Memorial Hospital admitted the claimant for approximately four or five days due to "left leg swelling problems." Doctors administered a bilateral "[D]oppler venous study" and diagnosed the claimant with left leg cellulitis and left lower leg lymphedema. The claimant introduced medical records and bills of Ste. Genevieve County Memorial Hospital for treatment of his left leg from October 23, 2005 to November 1, 2005, Mid America Rehab for occupational therapy for his left

leg from November 1 to November 22, 2005, and Dr. Pearson for treatment of left leg swelling from October 23, 2005 to October 12, 2006.

The claimant introduced the written reports and deposition of Dr. Robert Poetz, an osteopathic physician and surgeon. Dr. Poetz examined the claimant in June 2004 and prepared a written report dated August 23, 2004. Dr. Poetz opined that the primary injuries were "a substantial and contributing factor" to various permanent partial disabilities, some of which were preexisting. Dr. Poetz recommended, among other things, that the claimant avoid "prolonged sitting, standing, walking, bending, stooping, twisting, squatting, climbing or kneeling[,]" and "heavy lifting and strenuous activity."

Dr. Poetz examined the claimant again in December 2006 and prepared a written report dated March 8, 2007. Dr. Poetz stated, "[si]nce the patient's last evaluation he states he was working full duty; however his left leg continued to swell. He was hospitalized around October 2005 for lymphodema [sic] at Ste. Genevieve County Hospital and was treated with antibiotics." Dr. Poetz concluded, "[the claimant] is **Permanently and Totally Disabled** as a result of the combination of the [primary injuries] and his pre-existing conditions. He is and will be permanently and totally unemployable in the open labor markets." (Emphasis in original).

Dr. Poetz examined the claimant for the third time in August 2010, and prepared a written report dated October 7, 2010. Dr. Poetz stated that he had reviewed the medical records from Ste. Genevieve County Memorial Hospital. He also reviewed the following 2005 records: thoracolumbar x-ray (January 2005); left foot and ankle x-ray (February 2005); right ankle MRI (March 2005); chest x-ray (April 2005); left hand and wrist x-ray (May 2005); lumbar, thoracic, and cervical spine x-rays (October 2005); right elbow, hand, and wrist x-ray (October 2005); and "bilateral venous Doppler" (October 2005). Dr. Poetz concluded that "[the claimant] remains **Permanently and Totally Disabled** as a result of the combination of the [primary injuries] and his pre-existing conditions. He is and will be permanently and totally unemployable in the open labor market." (Emphasis in original).

In a 2010 deposition, Dr. Poetz testified that he did not refer to the claimant's 2005 injuries in his 2007 report, and that he did not recall whether he was aware of those injuries at the time. Dr. Poetz testified that his opinion of the claimant's disability changed from his 2004 report to his 2007 and 2010 reports because "the longer he's having the disabilities, the worse the prognosis becomes." The claimant also introduced the written report and deposition of vocational rehabilitation counselor Wilbur Swearingin.

The employer introduced Dr. Briccio Cadiz's written report dated August 9, 2002. In the report, Dr. Cadiz stated that he reviewed "extensive records" of the claimant dated May 6, 1999 through January 10, 2002. Dr. Cadiz observed that the claimant's medical history "date[d] back to 1999 with bilateral leg swelling, left more than the right" and that the claimant "has a medical condition of venous insufficiency bilaterally." Dr. Cadiz reported that "[t]he injury in January 2001 specifically having soft tissue swelling was an acute event on top of a chronic problem." In a report dated September 5, 2002, Dr. Cadiz stated that "[t]he acute insult from [the claimant's] injury in January 2001 has resolved."

The employer also introduced Dr. Sandra Tate's written report summarizing her opinion after she performed an independent medical examination of the claimant

in 2009. In her report, Dr. Tate stated that "[the claimant's] pre-existing history of phlebitis and cellulits [sic] and lymphedema are definate [sic] contributing factors and are the primary reasons that he is off of work." Dr. Tate concluded that the claimant "is not permanently disabled due to his left lower extremity complaints."

The ALJ determined that "[t]he record clearly supports a finding that [the claimant's] *permanent total disability condition* was a result of subsequent deterioration and not a result of [the claimant's] January 16, 2001 work injury." (Emphasis added). The ALJ determined that the claimant's 2001 injury and pre-existing disabilities combined to produce only permanent partial disability, and not permanent total disability, and awarded $38,968.24 in PPD benefits from the employer. The ALJ awarded $3,226.03 for past medical expenses the claimant incurred from 2002 to 2004, but denied reimbursement of the claimant's 2005 and 2006 medical expenses. The ALJ also awarded $6,328.41 in PPD benefits from the Second Injury Fund.

In its first award, the Commission adopted the findings, conclusions, decision, and award of the ALJ, except as to calculation of the liability of the Second Injury Fund pursuant to section 287.220.1 RSMo. (2000).[2] The Commission determined that the ALJ improperly excluded from the calculation of Fund liability the claimant's pre-existing disabilities that individually did not satisfy the minimum thresholds for triggering Fund liability set forth in section 287.220.1. Because the claimant had a pre-existing left-wrist disability that met the threshold of 15% permanent partial disability of a major extremity, however, the Commission modified the ALJ's decision and included all of the claimant's pre-existing disabilities in calculating the Fund's liability. The Commission ordered

the Fund to pay the claimant a total of $11,325.14 in PPD benefits. In all other respects, the Commission affirmed the ALJ's decision. Thus, in its first award, the Commission adopted the ALJ's conclusion that the claimant is permanently totally disabled.

The claimant appealed to this Court the Commission's first award that denied PTD benefits, awarded PPD benefits against the employer and the Second Injury Fund, and ordered reimbursement for certain past medical expenses, but not his 2005 and 2006 expenses. *Abt I*, 388 S.W.3d at 573–74. The Fund failed to file a timely notice of appeal of the Commission's first award, and we dismissed the Fund's belated appeal in *Abt I. Id.* at 574 n. 2. In *Abt I*, neither the employer nor the Fund argued that the claimant was not permanently and totally disabled. Instead, the employer and the Fund argued in support of the Commission's finding as to the *cause* of the claimant's permanent total disability, specifically that substantial and competent evidence supported the Commission's finding that the claimant's permanent total disability resulted from subsequent deterioration of his pre-existing conditions and not from the January 2001 work accident, independent of other factors.

The specific issues presented in *Abt I* were the Commission's rejection of Dr. Poetz's 2007 and 2010 reports finding the claimant permanently and totally disabled as a result of a combination of the claimant's primary injuries and pre-existing conditions, the Commission's rejection of Mr. Swearingin's report, its finding that the claimant's permanent total disability resulted solely from subsequent deterioration of the claimant's pre-existing conditions, and its denial of the claimant's 2005 and 2006 medical expenses. *Id.* at 574.

---

2. All statutory references are to RSMo. (2000).

We affirmed as supported by substantial and competent evidence the Commission's rejection of Mr. Swearingin's report and the 2007 report of Dr. Poetz. *Id.* at 579–80. However, we reversed and remanded the Commission's rejection of Dr. Poetz's 2010 report, and its determination that the claimant's permanent total disability resulted from subsequent deterioration of his pre-existing conditions. *Id.* at 584. We also remanded on the issue of the 2005 and 2006 medical expenses. *Id.*

In *Abt I*, we rendered several specific holdings regarding the evidence and the Commission's findings. First, having held "that the Commission's rejection of Dr. Poetz's 2010 opinion was not supported by competent and substantial evidence in the record before us," *id.* at 580, we reversed the Commission's determination that "Dr. Poetz's 2010 report did not consider the claimant's 2005 medical history," *id.* at 584. Second, we held that "the Commission erred in attributing [the claimant's] PTD solely to subsequent deterioration," *id.* at 582, and we reversed the Commission's determination that "subsequent deterioration of the pre[-]existing disabilities solely accounted for [the claimant's] permanent total disability," *id.* at 584. Third, in its denial of the claimant's request for reimbursement of certain 2005 and 2006 medical expenses, the Commission stated that it relied on "the evidence" and its "above findings," but it did not specify what evidence it found persuasive or which findings were controlling. *Id.* at 582–83. Accordingly, on the issue of past medical expenses, we held that "we must remand the case to the Commission for entry of more specific findings as to the facts necessary to support the Commission's conclusion." *Id.* at 583. Specifically, we noted that without findings as to whether the claimant requested treatment or the employer refused to provide it, we could not address these arguments, which remained open for consideration on remand. *Id.* We then reversed the Commission's determination that the claimant "was not entitled to reimbursement of the 2005 and 2006 medical expenses." *Id.* at 584. Finally, we remanded "for a reconsideration of the award in light of this opinion." *Id.*

In the first appeal, no party challenged the Commission's determination that the claimant was, in fact, permanently and totally disabled. Consequently, this Court did not address *whether* the claimant was or was not permanently and totally disabled but proceeded as if he was permanently and totally disabled as the ALJ found. This Court considered at length the *cause* of the claimant's permanent total disability, holding that the cause of the claimant's permanent total disability and reason for denying PTD benefits articulated by the Commission—subsequent deterioration of pre-existing conditions—was not supported by competent and substantial evidence because no medical expert proffered such an opinion. *Id.* at 581. "[W]e have determined that the Commission's rejection of Dr. Poetz's opinion was not supported by competent and substantial evidence. *See supra* Point II. Accordingly, we hold that the Commission erred in attributing *Claimant's PTD* solely to subsequent deterioration." *Id.* at 582 (emphasis added). Our opinion in *Abt I* contains more than half a dozen references to the claimant's permanent total disability as an undisputed established fact.

Our mandate in *Abt I* instructed that the award "be reversed in part as to the Commission's determinations that: (1) Dr. Poetz's 2010 report did not consider [the claimant's] 2005 medical history; (2) subsequent deterioration of the preexisting disabilities solely accounted for [the claimant's] permanent total disability; and (3) [the claimant] was not entitled to reimbursement of the 2005 and 2006 medical

expenses and the cause remanded to the aforesaid Commission, for reconsideration of the award, and affirmed in all other respects in accordance with this Court's opinion delivered December 11, 2012."

On remand, the Commission received no new evidence so the facts in evidence remained precisely as they were at the time of the Commission's first award. In its second award, the Commission reconsidered the issue of permanent total disability and found that the claimant's 2001 primary injuries combined with his pre-existing disabilities resulted in only 15% enhanced permanent partial disability. The Commission awarded the same PPD benefits against the employer and enhanced PPD benefits against the Fund as it rendered in its first award. The Commission did not expressly find that the claimant is *not* permanently and totally disabled at all. Rather, the Commission found merely "that the great weight of the evidence supports Dr. Poetz's 2004 opinion that employee's primary injuries combine with his preexisting disabilities to result in only enhanced permanent partial disability." The Commission specifically found that the claimant is *not* permanently and totally disabled solely as a result of the primary injuries. The Commission also specifically found that the claimant is *not* permanently and totally disabled as a result of the primary injuries combining with his pre-existing disabilities.

■ We now turn to the claimant's current appeal. On appeal, we review only questions of law, and we may modify, reverse, remand for rehearing, or set aside an award only where: 1) the Commission acted without or in excess of its powers; 2) the award was procured by fraud; 3) the facts found by the Commission do not support the award; or 4) the record lacks sufficient competent evidence to warrant making the award. Section 287.495.1;

*Hampton v. Big Boy Steel Erection,* 121 S.W.3d 220, 222 (Mo. banc 2003). We must consider the whole record to determine whether it contains sufficient, competent, and substantial evidence to support the award, and we will set aside the award if it is contrary to the overwhelming weight of the evidence. *Hager v. Syberg's Westport,* 304 S.W.3d 771, 773 (Mo.App. E.D.2010). We defer to the Commission on issues of fact, the credibility of witnesses, and the weight to be given to conflicting evidence. *Id.* Under the Workers' Compensation Law in effect at the time of the claimant's primary injuries, we resolve any doubt regarding the right to compensation in favor of the claimant. *Abt I,* 388 S.W.3d at 578; *see* section 287.800 RSMo. (2000) (requiring liberal construction of the Workers' Compensation Law).

In three points on appeal, the claimant challenges the Commission's decision denying compensation for permanent total disability and reimbursement for certain past medical expenses.

### *Points I and II*

■ In his first point, the claimant asserts the Commission erred in denying compensation for permanent total disability because this Court's decision in *Abt I* did not reverse the Commission's conclusion that the claimant was permanently totally disabled, and the law-of-the-case doctrine precludes the Commission's new finding that the claimant is not permanently totally disabled. The claimant argues that the Commission was free to decide what medical condition, disability, or injury—other than subsequent deterioration of pre-existing conditions—caused the claimant's permanent total disability, but the Commission was not at liberty to conclude, either implicitly or explicitly, that the

claimant was not permanently totally disabled after all.

In his second point, the claimant maintains that the Commission erred in finding that he was not permanently totally disabled because it ignored the claimant's credible testimony and found the 2010 report of Dr. Poetz unpersuasive while relying on other medical opinions that it had previously found not to be credible. We consider the claimant's Points I and II together.

■■■ The threshold question we must consider is whether our remand in *Abt I* was a general or a specific remand. We find some authority on appellate remands to the Commission, but their analysis of remands is somewhat abbreviated. Therefore, we will examine the analogous precedents of appellate remands to the circuit court. On remand, the appellate court's mandate defines the scope of the lower tribunal's authority. *Guidry v. Charter Communications, Inc.*, 308 S.W.3d 765, 768 (Mo.App.E.D.2010). The mandate communicates the judgment to the lower court, and the opinion, which is a part thereof, serves an interpretive function. *Id.* Following remand, the trial court must render judgment in conformity with the mandate and accompanying opinion. *Id.* We review *de novo* the question of whether the trial court followed the mandate. *Id.*

■■■ There are two types of remands: 1) a general remand that does not provide specific direction and that leaves all issues open to consideration in the new trial; and 2) a remand with directions that requires the trial court to enter a judgment in conformity with the mandate. *Smith v. Brown & Williamson Tobacco Corp.*, 410 S.W.3d 623, 633 (Mo. banc 2013); *Guidry*, 308 S.W.3d at 768. The appellate court's mandate, in conjunction with its opinion, serves to instruct the trial

court as to the type of remand ordered. *Smith*, 410 S.W.3d at 633. The type of remand has legal consequences. *Id.* at 634. A general remand leaves all issues *not conclusively decided* open for consideration at the new trial. *Id.* (emphasis added). On the other hand, where the mandate contains express instructions that direct the trial court to take a specified action, the court has no authority to deviate from those instructions. *Guidry*, 308 S.W.3d at 768.

■■■ But even a general remand cannot be read in isolation. *Welman v. Parker*, 391 S.W.3d 477, 483 (Mo.App.S.D. 2013). Rather, a general remand has the effect of directing the lower court to proceed in accordance with the holdings of the appellate court set forth in its opinion as the law of the case. *Id.* On remand, the proceedings should accord with both the mandate and the result contemplated in the opinion. *Id.* "It is well settled that the mandate is not to be read and applied in a vacuum. The opinion is part of the mandate and must be used to interpret the mandate itself." *Id.* at 483–84 (quoting *McDonald v. McDonald*, 795 S.W.2d 626, 627 (Mo.App.E.D.1990)).

We reiterate that on remand, the Commission received no new evidence so the facts in evidence remained precisely as they were at the time of the Commission's first award. In its second award, the Commission did not expressly find that the claimant is *not* permanently and totally disabled. Rather, the Commission found merely "that the great weight of the evidence supports Dr. Poetz's 2004 opinion that [the claimant's] primary injuries combine with his pre[-]existing disabilities to result in only enhanced permanent partial disability." The Commission specifically found that the claimant is *not* permanently and totally disabled solely as a result of

the primary injuries, nor is he permanently and totally disabled as a result of the primary injuries combining with his pre-existing disabilities.

Let us consider the Commission's reasoning. As a matter of logic, the claimant must be either permanently totally disabled or not permanently totally disabled. Further, if the claimant is permanently totally disabled, then there must be a cause. We might read the Commission's second award to implicitly find that the claimant is *not* permanently and totally disabled after all. We have, however, the ALJ's conclusion, adopted by the Commission in its first award, and unchallenged by any party on appeal in *Abt I*, that the claimant *is* permanently and totally disabled.[3] And on remand, the Commission did not expressly find that the claimant is *not* permanently and totally disabled. Rather, the Commission sought to circumvent the unchallenged finding of the existence of the claimant's permanent total disability by rendering findings eliminating any cause for the claimant's permanent total disability.

 "The doctrine of law of the case provides that a previous holding in a case constitutes the law of the case and precludes relitigation of the issue on remand and subsequent appeal." *Walton v. City of Berkeley,* 265 S.W.3d 287, 290 (Mo. App.E.D.2008). "The doctrine governs successive adjudications involving the same facts and issues." *Id.* Generally, a court's decision is the law of the case for all points presented and decided, *as well as for those issues that arise prior to the first adjudication that could have been raised but were not. Id.* (emphasis added).

We hold that the fact of *whether* the claimant is permanently and totally disabled was conclusively decided when the Commission adopted this finding of the ALJ in its first award, and no party challenged that finding in *Abt I*. The existence of the claimant's permanent total disability became the law of the case, and thus for purposes of workers' compensation, the claimant remains permanently and totally disabled.

Furthermore, even though we conclude that our remand was a general remand, this does not alter our conclusion. In *Smith v. Brown & Williamson Tobacco Corp.,* the Supreme Court explained that "[a] general remand leaves all issues *not conclusively decided* open for consideration at the new trial." (Emphasis added.). 410 S.W.3d at 634. Although factually distinguishable, we draw additional guidance from *Edmison v. Clarke,* 61 S.W.3d 302 (Mo.App.W.D.2001). In *Edmison,* the Western District held that its prior reversal of the portion of the trial court's judgment concerning the date to which child support would become retroactive did not impact or disturb the trial court's ruling that an award of retroactive support was proper in the first place. 61 S.W.3d at 310. As in *Edmison,* our reversal in *Abt I* of that portion of the Commission's award finding that the *cause* of the claimant's permanent total disability was attributable solely to deterioration of his pre-existing conditions did not disturb the Commission's unchallenged finding that the claimant was permanently and totally disabled in the first place. On remand

---

3. In its brief in the instant appeal, the employer stated that while the record as a whole would support a finding of permanent total disability, the Commission's determination that the claimant is not permanently and totally disabled as a result of the primary injuries alone or in combination with his pre-existing disabilities is supported by competent and substantial evidence. Oddly, both the employer and the Fund acknowledged at oral argument that the claimant is permanently and totally disabled.

from *Abt I*, only the *cause* of the claimant's permanent total disability, as opposed to the *existence* of permanent total disability, remained open for consideration. The Commission cannot now circumvent its prior conclusion that the claimant was permanently and totally disabled.

■ Having held that the existence of the claimant's permanent total disability has been conclusively decided, the question then becomes the *cause*, and thus the compensability, of the claimant's permanent total disability. No one argues that the disability is without cause, or that its cause cannot be found in the record. Thus, logic dictates that the claimant's permanent total disability here must result from one of the following four causes: 1) subsequent deterioration of pre-existing conditions alone; 2) some other injury or condition alone; 3) the 2001 primary injuries alone; or 4) the 2001 injuries in combination with the claimant's pre-existing conditions.

The first possibility is that deterioration of the claimant's pre-existing conditions alone caused his permanent total disability. In *Abt I*, however, we observed that:

Significantly, none of the foregoing medical experts [Dr. Poetz, Dr. Cadiz, or Dr. Tate] concluded that [the claimant] was permanently and totally disabled solely because of subsequent deterioration of [the claimant's] preexisting disabilities. Nonetheless, the Commission stated: "The record clearly supports a finding that [the claimant's] permanent total disability condition was a result of subsequent deterioration and not a result of [the claimant's] January 16, 2001 work injury." Rather than choosing one of the medical opinions, the Commission made a finding that is not consistent with any medical opinion in the record. Because no medical expert concluded that [the claimant] was permanently and totally disabled due solely to subsequent

deterioration, the Commission's finding is not supported by substantial and competent evidence.

388 S.W.3d at 581. The record contains no new evidence submitted since we reviewed the record in *Abt*. Thus, our assessment that the record contains no substantial and competent evidence to support such a conclusion remains true, and our holding in this regard is the law of the case. *See Walton*, 265 S.W.3d at 290(stating court's decision is the law of the case for all points presented and decided).

The second hypothesis is that the cause is entirely the result of some other later injury or condition. The record, however, contains no support for this proposition, nor has any party, the ALJ, or the Commission suggested another injury or condition that has rendered the claimant permanently and totally disabled. Thus, we reject this possibility as unsupported by substantial and competent evidence.

The third possibility is that the 2001 injuries alone resulted in the claimant's permanent total disability. But the Commission's second award expressly found that the claimant is *not* permanently and totally disabled solely as a result of the 2001 injuries. This finding is supported by substantial and competent evidence because no medical expert opined that the 2001 injuries alone rendered the claimant permanently and totally disabled.

The final proposition is that the claimant's permanent total disability resulted from the 2001 injuries in combination with the claimant's pre-existing conditions. In its second award, the Commission found that the primary injuries and the claimant's pre-existing conditions resulted only in 15% enhanced permanent partial disability. The Commission expressly found that the claimant in *not* permanently and totally disabled as a result of the 2001

injuries in combination with his pre-existing conditions. These findings are not supported by substantial and competent evidence. Rather, substantial and competent evidence in the record supports the conclusion that the claimant is permanently and totally disabled as the result of a combination of his 2001 injuries and his pre-existing conditions.

The claimant testified that he experienced more swelling of his left leg after the 2001 accident, that his left leg was more swollen than his right, and that his left leg was swollen constantly from the time of the accident to the time he entered the hospital in October 2005. He explained that it would become so swollen that the skin would open and the leg would leak fluid, soaking the claimant's pants leg. The claimant had to quit wearing work boots because his left leg and foot became too swollen to fit in the boots. The claimant's wife testified that she observed the claimant experienced increased left-leg swelling after the 2001 accident. The ALJ did not find either the claimant or his wife to be unworthy of belief, and at one point rendered findings regarding the claimant's pre-existing left wrist disability "[b]ased on the credible testimony of [the claimant] and the evidence submitted."

The medical records contain numerous references to the claimant's 2001 injuries and subsequent problems with his leg. On his January 14, 2002 intake questionnaire, Dr. Kuenzel of Physicians Health and Rehab noted that the claimant's left leg had "fluid oozing from [the] leg." The Ste. Genevieve Medical Group records of April 12, 2002 note that "[t]he legs have generalized swelling, more significant on the left. Significant to note at this time patient had severe injury to the left leg some years

ago, and the swelling is usually more increased on that side." On July 19, 2002, the Group's records state that the claimant "has a past injury or crush injury to the left lower extremity and the left leg is chronically more edematous than the right." The Group's July 24, 2002 notes refer to the claimant's trauma to the left leg. On September 25, 2002, the Group's records observe that the claimant "[d]oes have more swelling in the left leg, however, this is the norm for him as he has had significant injuries and resultant surgery on that leg." And on September 18, 2003, the Group's notes state that the edema was worse on the left than the right "secondary to numerous injuries to his left leg that were sustained in an accident." The records from Ste. Genevieve County Memorial Hospital dated May 16, 2005 state that the claimant "was in an accident several years ago, injuring his leg, and he still has swelling in the left leg down to the ankle." Finally on October 23, 2005, the Hospital's admission records note a history of left-leg trauma and surgery resulting from an accident, and that the claimant has experienced swelling since.

Dr. Poetz examined the claimant three times, and the claimant entered Dr. Poetz's corresponding 2004, 2007, and 2010 reports and 2010 deposition testimony into evidence.[4] In 2004, Dr. Poetz stated that the claimant's prognosis was guarded because of the length of time that had elapsed since the accident and the claimant's continued pain. He opined that the claimant's injuries sustained in the 2001 accident were a substantial and contributing factor to the claimant's disabilities, and that the combination of the present and prior disabilities resulted in a total that exceeded the simple sum by ten to 15%.

4. In *Abt I* we affirmed the Commission's rejection of Dr. Poetz's 2007 opinion because it did not consider various injuries that the claimant suffered in 2005. 388 S.W.3d at 579.

Asked how the claimant's 2001 degloving injury affected his pre-existing cellulitis and phlebitis, Dr. Poetz explained:

> He had a major tissue injury to the lower extremity with flap formation and subsequent lymphedema, all putting additional pressure on the venous system, the lymphatic system, the cellulitis. All the soft tissues of the lower extremity were impacted by that severe laceration.

Dr. Poetz went on to explain the cycle of increasing problems that affected the claimant's leg.

> I should mention, if I may also, as swelling increases, it compresses veins and lymphatic channels even more from other fluids there from outside of the lymphatic channels of the veins, so it's like a vicious cycle; more swelling causes more pressure and more pressure causes more swelling, etc., etc.

By 2010, Dr. Poetz had revised his opinion regarding the claimant's level of disability, concluding that the combination of the present and prior disabilities resulted in a total that exceeded the simple sum by 20%, and that the claimant was permanently and totally disabled. Dr. Poetz concluded that the claimant's inability to work resulted from his pre-existing physical condition combined with the consequences of the 2001 accident. Dr. Poetz explained in his deposition that the reason he revised his opinion regarding permanent total disability was the fact that the claimant continued to have disabilities, that the longer he had the disabilities, the worse the prognosis became. Dr. Poetz continued, "the prognosis worsens or the disability worsens because of—the combination of disability worsens because it becomes more and more clear that this person is not ever going to get better." He opined that:

> [The claimant] had some infectious processes going on in the interim as a result of the injury and every time you have an infection, you have more cellulitis, you have more phlebitis, you have more risk of recurrence with scar tissue and everything else, so in that sense, you would say that the disability has increased because of that.

The record contains substantial and competent evidence to support a conclusion that the claimant's 2001 injuries combined with his pre-existing disabilities to result in permanent total disability. As explained above, no other possible cause of the claimant's permanent total disability is supported by substantial and competent evidence.

The ALJ's determination that the claimant is permanently and totally disabled, adopted by the Commission and unchallenged on appeal in *Abt I*, has been conclusively decided and has become the law of the case. The Commission was not free to attempt to circumvent that determination by finding that the only possible cause of the claimant's permanent total disability supported by substantial and competent evidence—the combination of the 2001 injuries and the claimant's pre-existing conditions—resulted in only permanent partial disability. We grant the claimant's first and second points.

## Point III

In his third point, the claimant asserts the Commission erred in denying reimbursement for certain past medical expenses. He argues that the law of the case prohibits the Commission from denying reimbursement based on a failure to include the issue in his application for review, and also that the Commission incorrectly applied the law and misconstrued the evidence.

In its first award, the Commission stated:

[The claimant] is seeking payment of $15,676.60 in previously incurred medical expenses. These costs are alleged to be for treatment that [the claimant] received from Physicians Health and Rehab (1/14/2002 to 3/31/2004), Ste. Genevieve County Memorial Hospital (10/23/2005 to 11/1/2005), Mid America Rehab (11/1/2005 to 11/22/2005), and Dr. Richard Pearson (10/23/2005 to 10/12/2006). Employer–Insurer has disputed payment of these expenses based on causal relationship. Based on the evidence and my above findings, I find that the previously incurred medical expenses related to Ste. Genevieve County Memorial Hospital (10/23/2005 to 11/1/2005), Mid America Rehab (11/1/2005 to 11/22/2005), and Dr. Richard Pearson (10/23/2005 to 10/12/2006) are a result of subsequent deterioration and not related to [the claimant's] January 16, 2001 work[-]related injury.

Of the $15,676.60 requested, the Commission awarded $3,266.03 for previously incurred medical aid provided by Physicians Health and Rehab from 2002 to 2004, but denied reimbursement for medical aid provided by Ste. Genevieve County Memorial Hospital, Mid America Rehab, and Dr. Pearson in 2005 and 2006. The Commission did not specify what evidence it found persuasive or which findings controlled its decision.

In *Abt I*, we observed that the "above findings" cited by the Commission in its decision included its rejection of Dr. Poetz's 2010 opinion and its finding that the claimant's permanent total disability resulted solely from subsequent deterioration of his pre-existing conditions. 388 S.W.3d at 583. Without knowing whether the Commission based its decision on findings that we had held erroneous, we could not determine whether substantial and competent evidence supported the Commission's conclusion. *Id.* We remanded the case to the Commission for entry of more specific findings as to the facts necessary to support the Commission's conclusion, namely findings regarding the parties' arguments to the Commission concerning whether the claimant requested treatment, whether the employer authorized treatment, and whether the employer waived its right to direct the claimant's treatment when it refused to provide the treatment. *Id.*

In its second award, the Commission again denied the expenses for medical aid provided by Ste. Genevieve County Memorial Hospital, Mid America Rehab, and Dr. Pearson in 2005 and 2006. The Commission first noted that the claimant did not include the issue of past medical expenses in his application for review, and deemed the issue not preserved for review and thus abandoned. Alternatively, the Commission explained that even had the issue been properly preserved, the Commission would nonetheless affirm the ALJ's denial. The Commission found that the claimant failed to provide sufficient testimony causally linking the medical treatment and expenses at issue to the 2001 injuries. Furthermore, the Commission found that the claimant never requested that the employer provide medical care after May 2001 for treatment of the primary injuries.

We reject the Commission's contention that the issue of reimbursement for past medical aid is not properly preserved and therefore not properly before the Commission. In *Abt I*, we observed that the parties presented arguments to the Commission concerning whether the claimant requested treatment, whether the employer authorized the treatment, and whether the employer waived its right to direct the claimant's treatment when it refused to provide the treatment. *Id.* We stated that "the issues were at least implicitly

before the Commission." *Id.* We remanded the case to the Commission for entry of more specific findings as to the facts necessary to support the Commission's conclusion, namely findings regarding the parties' arguments to the Commission. *Id.* Thus, it is the law of the case that the claimant's request for reimbursement of past medical expenses was before the Commission, and our remand limited the Commission to making findings on the identified issues. *See Walton*, 265 S.W.3d at 290 (doctrine of law of the case governs successive adjudications involving the same facts and issues); *see Abt I*, 388 S.W.3d at 583 (without specific findings as to whether claimant requested treatment or employer refused it, we are unable to address these arguments, which remain open for consideration on remand). And, of course, the Commission in its first award adjudicated the request on the merits. The Commission is not free to now determine that reimbursement for the claimant's past medical expenses was not properly before it.

▄▄▄ In the instant appeal, the claimant seeks a total of $10,859.57 that the Commission denied for reimbursement for medical aid provided by Ste. Genevieve County Memorial Hospital and Mid America Rehab. The claimant appears to have abandoned his request for reimbursement of $1,551.00 for medical aid provided by Dr. Pearson. In any event, we affirm the Commission's denial of reimbursement of $1,551.00 for medical aid provided by Dr. Pearson because the claimant testified, first, that he could not remember why he saw Dr. Pearson. He then testified that Dr. Pearson drew fluid from the claimant's knee. Dr. Pearson's records indicate that he is an orthopedic physician who treated the claimant for right knee problems and elbow, wrist, and hand pain. Consequently, we can find no causal connection be-

tween the claimant's 2001 primary injuries to his lower left leg, his ongoing problems with lymphedema, phlebitis, and cellulitis of the lower left leg, and his treatment with Dr. Pearson.

▄▄▄ We now turn to the $10,859.57 for medical aid provided in October and November 2005 by Ste. Genevieve County Memorial Hospital and Mid America Rehab. The Commission found that the claimant failed to provide sufficient testimony causally linking the relevant treatment and medical bills to the 2001 accident. We disagree. When a claimant submits medical bills and identifies them as related to, and the product of, his injury, and when the bills relate to the professional services rendered as the medical records in evidence demonstrate, a sufficient factual basis exists for the Commission to award reimbursement for past medical expenses. *Martin v. Mid–America Farm Lines, Inc.*, 769 S.W.2d 105, 111–12 (Mo. banc 1989)(superseded by statute on other grounds).

The claimant testified that his left leg was swollen from the time of the accident to his October 2005 hospitalization. As we discussed in connection with Points I and II, the claimant's medical records from January 2002 to October 2005 are replete with references to his primary injuries and subsequent left-leg swelling. The claimant related his October 2005 hospitalization to his 2001 injuries. The hospital's admission records note a history of left-leg trauma and surgery resulting from an accident, and that the claimant had experienced swelling since. The claimant established sufficient causal connection between his 2001 primary injuries and his 2005 medical expenses from Ste. Genevieve County Memorial Hospital and Mid America Rehab.

▄▄▄ The Commission also determined that the claimant did not request further medical care to treat the primary injuries.

Again, we disagree. Medical aid is one component of the compensation an injured worker is entitled to receive. *Martin v. Town & Country Supermarkets*, 220 S.W.3d 836, 844 (Mo.App.S.D.2007). Section 287.140.1 states in pertinent part that the employee shall receive and the employer shall provide such medical treatment as may reasonably be required after the injury or disability to cure and relieve from the effects of the injury. This includes treatment that gives comfort or relief from pain even though a cure is not possible. *Martin*, 220 S.W.3d at 844. The employer has an absolute and unqualified duty to provide statutorily-required medical aid to a claimant. *Id.* As a general rule, the employer has control over the selection of the claimant's medical providers. *Id.* An important caveat exists, however. *Id.* If the employer is on notice that the claimant needs treatment, and the employer fails or refuses to provide it, the claimant may select his or her own medical provider and hold the employer liable for the costs thereof. *Id.*

The claimant testified that he reported to the employer his ongoing back pain following the 2001 primary injuries. The claimant further testified that as a result of his back pain, the employer assigned another worker to help him open, close, and seal heavy doors and lids on railroad cars, thus demonstrating that the employer knew of the claimant's ongoing back problems. Yet the employer provided no further medical treatment. The claimant tried on his own to see a Dr. Maynard for his back pain. Dr. Maynard, however, refused to examine the claimant upon learning that the claimant's pain was related to a work injury. The claimant reported Dr. Maynard's refusal to see him to the employer's representative, Rick Donovan, who was present at the hearing but did not testify. Despite these reports, the employer never authorized the claimant to obtain any further treatment. The claimant then sought treatment on his own from Dr. Kuenzel with Physicians Health and Rehab in January 2002. The Commission found that the treatment rendered by Physicians Health and Rehab from 2002 to 2004 was causally related to the 2001 accident, and awarded reimbursement of those medical bills in the amount of $3,266.03 in its first award.

While the employer has the right to name the treating physician, it is well established that the employer may waive that right by failing or neglecting to provide necessary medical aid. *Id; Wiele v. Nat'l Super Markets, Inc.*, 948 S.W.2d 142, 147 (Mo.App.E.D.1997)(overruled on other grounds by *Hampton v. Big Boy Steel Erection*, 121 S.W.3d 220 (Mo. banc 2003)); *Emert v. Ford Motor Co.*, 863 S.W.2d 629, 631 (Mo.App.E.D.1993)(overruled on other grounds by *Hampton v. Big Boy Steel Erection*, 121 S.W.3d 220 (Mo. banc 2003)). Our research has revealed no case providing that a claimant must make repeated requests for treatment or provide the employer with notice multiple times that the claimant needs further treatment. Nor does the employer direct us to any such authority.

Thus, when the claimant notified the employer of his ongoing back pain, and again when he notified the employer of his unsuccessful attempt to obtain treatment, the employer was placed on notice that the claimant required additional medical aid. The employer failed to provide it. The claimant was then free to select his own physicians to render medical aid, and the employer is responsible for the cost of that treatment. *See Martin*, 220 S.W.3d at 847 (holding that once employer refused or neglected to provide claimant with reasonable and necessary medical aid, she was free to procure such treatment on her own).

The claimant sought and was denied treatment for his back before he obtained, on his own, the disputed treatment for his leg. This fact does not alter our conclusion that the employer waived its right to direct the medical treatment for the claimant's leg. By failing to provide medical treatment for the claimant's back, the employer waived its right to direct the medical treatment for all of the claimant's primary injuries, which were sustained at the same time in January 2001. In *Wiele v. National Super Markets,* the claimant experienced numbness and tingling from her shoulders to her fingertips. 948 S.W.2d at 144. A hand specialist diagnosed her with bilateral carpal tunnel syndrome and scheduled surgery. *Id.* The claimant twice requested medical treatment from her employer prior to the surgery, which the employer denied. *Id.* The claimant filed a claim for compensation alleging injury to her wrists, arms, and body from performing repetitive activity at work. *Id.* Two years later, the claimant was diagnosed with bilateral thoracic outlet syndrome, which was responsible for her shoulder pain and aggravated by her work. *Id.* The Commission concluded that the shoulder injuries were included in the claim for compensation, and that the claimant suffered from those injuries when she filed her claim. *Id.* at 145. This Court affirmed the Commission's determination that the employer was responsible for the claimant's medical treatment of her wrists and shoulders. *Id.* at 147. We held that substantial and competent evidence existed that the claimant requested medical treatment at the time she was diagnosed with a disability, that the employer denied treatment, and that the shoulder injury, although not yet diagnosed, existed at that time. *Id.*

The Commission's finding that the claimant failed to establish a causal connection between the primary injuries and the 2005 medical expenses and its finding that the claimant never requested additional medical aid are not supported by substantial and competent evidence. We grant the claimant's third point insofar as it requests reimbursement of medical expenses incurred in October and November of 2005 with Ste. Genevieve County Memorial Hospital and Mid America Rehab in the amount of $10,859.57.

*Conclusion*

The ALJ's determination that the claimant is permanently and totally disabled, adopted by the Commission and unchallenged on appeal in *Abt I*, was conclusively decided and has become the law of the case. The Commission was not free to circumvent that determination by finding that the only possible cause of the claimant's permanent total disability supported by substantial and competent evidence—the combination of the 2001 injuries and the claimant's pre-existing conditions—resulted only in permanent partial disability.

We hold that the claimant is permanently and totally disabled as a result of the combination of his 2001 primary injuries and pre-existing conditions. We reverse the Commission's award denying compensation for the claimant's permanent total disability, and remand to the Commission with instructions to calculate the liability of the employer and the Second Injury Fund and to award compensation for permanent total disability benefits accordingly.

Furthermore, the Commission's denial of reimbursement for medical expenses incurred in connection with medical aid provided in October and November 2005 by Ste. Genevieve County Memorial Hospital and Mid America Rehab is not supported by substantial and competent evidence.

We hold that the claimant established that his medical aid obtained in October and November 2005 from Ste. Genevieve County Memorial Hospital and Mid America Rehab was causally linked to the January 2001 primary injuries, that the claimant requested additional medical aid, and that the employer waived its right to direct the claimant's treatment when it then failed or neglected to provide the necessary medical aid. We reverse the Commission's denial of reimbursement of $10,859.57 for medical expenses incurred in connection with medical aid provided in October and November 2005 by Ste. Genevieve County Memorial Hospital and Mid America Rehab. We order the Commission to award the claimant $10,859.57 from the employer as reimbursement for these medical expenses.

We affirm the Commission's denial of reimbursement of $1,551.00 for medical aid provided by Dr. Pearson in 2005 and 2006.

ROBERT G. DOWD, JR. and SHERRI B. SULLIVAN, JJ., concur.

