**BURKE & SONS OIL CO., Appellant,**

v.

**DIRECTOR OF REVENUE, STATE OF MISSOURI, Respondent.**

No. WD 39774.

Missouri Court of Appeals,
Western District.

July 26, 1988.

Motion for Rehearing and/or Transfer
to Supreme Court Denied
Aug. 30, 1988.

Application to Transfer Denied
Oct. 18, 1988.

John H. Trader, Kansas City, for appellant.

William Webster, Atty. Gen., Melodie A. Powell, Asst. Atty. Gen., Jefferson City, for respondent.

Before NUGENT, P.J., and CLARK and COVINGTON, JJ.

NUGENT, Presiding Judge.

The Director of Revenue assessed Burke & Sons Oil Co., $125,003.99 in use taxes, interest and penalties for periods in 1979 through January, 1984.

Burke & Sons appeals from the decision of the administrative hearing commission which held it liable for the use tax authorized by §§ 144.600 to 144.745.[1] We reverse.

Burke & Sons is an unincorporated family owned firm in the business since 1969 of selling fuel and oil from its sole place of business in Pittsburg, Kansas. Sales in question during the assessment period totaled $2,589,000, of which $2,581,000 were made to Midwestern Mining and Reclamation, Inc., now located in Joplin, Missouri. Until July, 1982, Midwestern's business of-

---

1. Revised Statutes of Missouri, 1986.

fice was in Ft. Scott, Kansas. A very small amount of additional sales were made to Missouri farm accounts. The record does not show what percentage of Burke & Sons' gross sales were made to Midwestern.

All of Burke & Sons' sales orders from Midwestern were received by telephone and accepted in Pittsburg, Kansas. During the assessment period, Burke & Sons never used the radio, television, newspapers, or mails for business advertising, solicitation or marketing. It never maintained, occupied or used any office, subsidiary, branch, place of distribution, warehouse, storage place, or other facility in Missouri and never had a representative, agent, sales person, canvasser, or solicitor in Missouri for the purpose of selling, soliciting, or taking orders.

Nevertheless, Burke & Sons did deliver some of its merchandise to Midwestern in Missouri by both common carrier and its own vehicles. Over a sixty-one month period, about twenty-four percent of Burke & Son's deliveries to Midwestern's mines were by one of its own vehicles. The trip from Burke & Sons to Midwestern's mines in Bronaugh, Missouri, was about thirty-five miles, five to seven miles inside the Missouri state line.

Burke & Sons argues that the administrative hearing commission erred in imposing on it a use tax collection responsibility and assessment of liability for failure to do so because that imposition violates the Commerce Clause of the United States Constitution. It contends that its presence in Missouri was insufficient to create the nexus needed to justify imposition on it of use tax collection responsibility and liability.

■ In *Complete Auto Transit, Inc. v. Brady*, 430 U.S. 274, 279, 97 S.Ct. 1076, 1079, 51 L.Ed.2d 326 (1977), the Supreme Court enunciated a four part test to determine whether taxation of interstate sales is permissible under the Commerce Clause of the United States Constitution. First, a substantial nexus must exist with the taxing state; second, the tax must be "fairly apportioned"; third, the tax must not discriminate against interstate commerce, and, fourth, the tax must be "fairly related to the service" provided by the state.

■ The Court in *Miller Bros. Co. v. Maryland*, 347 U.S. 340, 344–45, 74 S.Ct. 535, 538–39, 98 L.Ed. 744 (1954), discussed in detail the contacts necessary to subject an out-of-state vendor to a state's taxing power and held that to impose the state's tax on an out-of-state person or transaction "due process requires some definite link, some minimum connection, between a state and the person, property or transaction it seeks to tax."

Earlier the Court had found a sufficient nexus for imposition of an Iowa use tax on a Minnesota corporation that regularly sent its traveling salesmen into Iowa to solicit orders. *General Trading Co. v. State Tax Commission of Iowa*, 322 U.S. 335, 338, 64 S.Ct. 1028, 1029, 88 L.Ed. 1309 (1944). The Court there held that by sending those salesmen into the state, General Trading Co. became a retailer maintaining a place of business within the state. The Court later characterized those activities of the Minnesota corporation as "continuous local solicitation." *Miller Bros. Co., supra*, 347 U.S. at 345, 74 S.Ct. at 539.

In *Scripto, Inc. v. Carson*, 362 U.S. 207, 80 S.Ct. 619, 4 L.Ed.2d 660 (1960), the Court likewise found sufficient nexus to impose use tax liability on Scripto, a Georgia corporation that employed ten brokers in the State of Florida, each of whom was a resident of Florida and each of whom had his own specific territory within the state. Again the key was the conducting of continuous local solicitation through the ten brokers.

■ On the other hand, in *National Bellas Hess, Inc. v. Department of Revenue of Illinois*, 386 U.S. 753, 87 S.Ct. 1389, 18 L.Ed.2d 505 (1967), the Court ruled that a sufficient nexus did not exist to permit the state to require National Bellas Hess, the foreign vendor, to collect Illinois use tax. The company maintained no place of business in Illinois, owned no property and had no agents or telephone listings in Illinois, and did not advertise its merchandise for sale in newspapers, on billboards or on

radio or television in Illinois. It merely mailed a catalogue twice a year to its Illinois customers and mailed occasional advertising flyers to past and potential customers in Illinois. The basis for the Court's decision was that Illinois could not impose a duty of use tax collection upon a company whose only connection with customers in Illinois was by common carrier or the United States mail. Merely communicating with customers in a state by mail or common carrier as part of a general interstate business does not create a sufficient nexus.

In *Miller Bros., Inc., supra,* a Delaware store mailed sales circulars to its customers, including Maryland customers; it also delivered goods to Maryland customers. Some deliveries were by common carrier, but approximately sixty-seven percent of those deliveries were by Miller Bros.' own trucks. The Court held at 345 that, based upon Miller Bros.' limited contacts with Maryland, "the invasion or exploitation of the consumer market in Maryland" provided insufficient contacts to subject Miller to Maryland's taxing power.

In the present case the Director cited *National Geographic Society v. California Board of Equalization,* 430 U.S. 551, 97 S.Ct. 1386, 51 L.Ed.2d 631 (1977), to support imposition of the use tax and urged its application instead of *Miller Bros.* The commission found that, although *Miller Bros.* was not overruled, *National Geographic* departed substantially from the majority view in *Miller Bros. National Geographic,* however, is distinguishable from the present case in important ways. First, National Geographic maintained offices in California whereas Burke & Sons maintained no office in Missouri. Those offices solicited advertising for the Society's magazine; Burke & Sons never solicited business in Missouri. The Society served many customers; for all practical purposes, Burke & Sons had one customer in Missouri. Because of these differences, *National Geographic* is inapplicable to the facts of this case.

Unlike General Trading Co. and Scripto, Inc., mentioned earlier, Burke & Sons sent no salesmen into Missouri and had no employees in Missouri. Like Miller Bros., however, Burke & Sons did make some deliveries into Missouri, but whereas Miller Bros. delivered sixty-seven percent of its sales by private vehicles, Burke & Sons delivered only twenty-four percent of its sales to Midwestern by private vehicles, and those deliveries were made within seven miles of the Kansas state line.

Burke & Sons' brief cites us to an earlier case before the administrative hearing commission where the circumstances were similar to this case. *Primary Steel, Inc. v. Director of Revenue,* (Missouri Administrative Hearing Commission, No. RS–82–0059, September 7, 1983). Prior decisions of the AHC are of no precedential value to appellate courts, but the comparison is of passing interest. In that case, Primary Steel made sales by telephone from its Memphis office to buyers in Missouri. It maintained no offices or employees in Missouri and did not make deliveries in Missouri; however, it did send salesmen into Missouri on occasion.

The commission found that the salesmen's occasional trips into Missouri could not be characterized as "continuous local solicitation" or as an "active and aggressive operation within the taxing state." The commission then concluded that no definite link or minimum connection existed and that, therefore, Missouri could not impose a use tax collection responsibility on Primary Steel.

■ In the present case, Burke & Sons made deliveries into Missouri over a sixty-one month period. It sent no salesmen into Missouri and it maintained no office in Missouri. It did not advertise or solicit business in Missouri. Only about twenty-four percent of its sales to Midwestern were delivered by private vehicle. The Director of Revenue argues that because this twenty-four percent totaled $593,271.82, it is substantial and creates the required nexus. This figure still constitutes only about twenty-four percent of petitioner's sales to Midwestern; the other seventy-six percent was delivered by common carrier. In the light of *Miller Bros., Inc.,* twenty-four per-

cent of the sales to a single customer is not "substantial." Burke & Sons' five to seven mile trips into Missouri to supply only one customer does not constitute an "invasion or exploitation of the consumer market" in Missouri and could not create a sufficient nexus to impose use tax collection responsibility on petitioner.

■ Moreover, even if the Director of Revenue had established a sufficient nexus, the tax imposed would certainly have failed the second and the fourth prongs of the test set out in *Complete Auto Transit, Inc., supra,* requiring that the tax be "fairly apportioned" and that it be "fairly related to the services provided by the state."

The assessment period covers sixty-one months during which the evidence shows 373 sales to have been made to Midwestern in Missouri. Of those sales trips, however, only about twenty-four percent, that is, about ninety-three separate sales, were delivered in Burke & Sons' vehicles. Assuming that the seven-mile trip from the Kansas line to the Midwestern mine took fifteen minutes, or a twenty-eight minute round trip, the total time driven by Burke & Sons' trucks on Missouri public roads for the entire sixty-one month period would be no more than 43.4 hours. For that the director seeks to assess $86,111.38 in use taxes plus $30,111.38 in interest plus $8,733.20 in penalties, a total of $125,-003.99. Figured on an hourly rate, the cost to Burke & Sons for this minimal use of Missouri roads and services would be $2,880.27. Figured on the basis of mileage, the cost per round trip would be $1,344.12. That is hardly either "fair apportionment" or "fairly related to the services provided by the state."

For the foregoing reasons, we reverse the decision of the administrative hearing commission and remand the case to the commission for entry of an order consistent with this decision.

All concur.