Linda MONROE, Appellant,

v.

WAL–MART ASSOCIATES, INC., Respondent.

No. ED 85110.

Missouri Court of Appeals, Eastern District, Division Two.

May 3, 2005.

David N. Damick, St. Louis, MO, for appellant.

Sarah H. Hale, St. Louis, MO, for respondent.

**PATRICIA L. COHEN**, Presiding Judge.

### Introduction

Linda Monroe ("Claimant") appeals the final award of the Labor and Industrial Relations Commission ("Commission") denying Claimant's request for attorney's fees and costs pursuant to Section 287.560 RSMo 2000.[1] Because the facts found by the Commission do not support the denial of Claimant's request for costs, attorney's fees and interest, we reverse and remand.

### Statement of Facts and Proceedings Below

Claimant began working as a stocker for Wal-Mart in the beginning of May 2000. As a stocker, Claimant unloaded trucks, transported freight and placed it on shelves. While at work on May 16, 2000, Claimant felt a pop or rip and severe abdominal pain when she lifted a fifty-pound bag of dog food. When Claimant told her supervisor about the injury, he told her to clock out and leave for the emergency room. Claimant told her supervisor that she was going to St. Joseph's Hospital.

At the hospital, Claimant underwent a CT scan of her abdomen and pelvis. The CT report indicated a "small lower abdominal ventral hernia containing a loop of small bowel." The physician who discharged Claimant: (1) prescribed Vicodin; (2) issued a 10-pound lifting restriction; and (3) ordered Claimant to follow up with Dr. McAllister concerning hernia repair.

After her discharge from the hospital, Claimant stopped at Wal-Mart to deliver a copy of the lifting restriction sheet. The following morning, Claimant contacted the personnel manager who confirmed that Wal-Mart was in receipt of the lifting restriction. In their telephone conversation, the personnel manager informed Claimant that Wal-Mart would not compensate Claimant for her medical bills because Claimant's injury was not work-related. Approximately one week later, Claimant went to the store and spoke to the store manager who stated that Wal-Mart requires all employees to lift fifty to sixty pounds, and as a result, the store manager terminated Claimant's employment.

Claimant filed a formal Claim for Compensation with the St. Louis Office of the Division of Workers' Compensation on May 30, 2000 alleging that on May 16, 2000 she suffered a hernia when "while in the course and scope of employment [Claimant] was lifting bags of dog food." Claimant retained counsel who, in a letter dated June 21, 2000, reiterated to Wal-Mart that Claimant: (1) suffered a workplace injury that had been diagnosed as a hernia in need of immediate medical attention; (2) reported the injury to her immediate supervisor and to the appropriate person in the Personnel Department who denied coverage for medical treatment; and (3) is entitled to workers' compensation benefits. On June 27, 2000, Wal-Mart filed its Answer to Claim for Compensation with the Division of Workers' Compensation admitting that Wal-Mart employed Claimant and that the parties were subject to the provisions of the Missouri Workers' Compensation Act but denying the specific allegations in Claimant's Claim for Compensation.

Claimant visited her doctor on July 25, 2000. Records from Dr. Jerry Meyers dated July 25, 2000, state "? hernia" and refer to an injury dated May 16, 2000 when Claimant lifted many forty to fifty pound bags of dog food. Dr. Meyers apparently was not provided with the CT scan done on May 16, 2000 until on or

---

1. All further statutory references are to RSMo 2000, unless otherwise noted.

about December 26, 2001. In light of Wal–Mart's refusal to pay for medical treatment as well as Claimant's inability to pay for her own care, Claimant did not seek additional treatment for her hernia for some time.

When, after attempting several light-duty jobs, Claimant's pain increased, Claimant returned to Dr. Meyers. After examining Claimant on December 26, 2001, Dr. Meyers informed Claimant that her hernia could rupture, strangulate and catch a portion of the bowel if she continued working. At that time, Dr. Meyers recommended surgery. Dr. Meyers also issued a detailed report regarding Claimant's health, the results of the CT scan and the causal connection between Claimant's workplace injury and her hernia.

Wal–Mart concedes that it received from Claimant's counsel Dr. Meyers's December 26, 2001 report. In addition to the demand that accompanied Dr. Meyers's report, Claimant's counsel sent a demand for emergency medical treatment on December 28, 2001. On January 8, 2002, counsel provided notice to Wal–Mart that Claimant would undergo surgery and that, in light of Wal–Mart's refusal to pay for treatment, Dr. Meyers agreed to operate on Claimant after Claimant signed a lien agreeing to pay Dr. Meyers from any proceeds she later received from Wal–Mart. In correspondence dated January 9, 2002, Wal–Mart denied Claimant's claim. Two days later, Dr. Meyers performed surgery to repair Claimant's hernia.

The parties resumed contact on April 18, 2002 when the claim went to mediation at the Division of Workers' Compensation. Mediation was unsuccessful.[2] Months af-

ter the first two unsuccessful mediations, Wal–Mart informed Claimant's counsel that it had made an appointment for Claimant to be seen by its own medical doctor.

On October 22, 2002, Claimant met with Wal–Mart's medical examiner, Dr. Brian Rogers. Dr. Rogers prepared a report the following day. In his report, Dr. Rogers stated that Claimant's hernia was in fact the result of the workplace injury. Approximately one month later, Wal–Mart sent Dr. Rogers a letter urging him to reconsider his opinion regarding causation. On November 26, 2002, Dr. Rogers issued a supplemental report and reiterated his opinion by stating, "I ... have no changes to my report issued to you on October 22, 2002."

Despite Dr. Rogers's unequivocal conclusion that Claimant's hernia was the result of the alleged workplace injury, Wal–Mart continued to deny compensation. On January 20, 2003, Claimant's counsel made an additional written demand for settlement in light of Dr. Rogers's conclusions. Due to the parties' inability to settle the claim, a hearing was scheduled for May 22, 2003.[3] In preparation for the hearing, counsel for Claimant deposed Dr. Rogers and Dr. Meyers.

The hearing took place, as scheduled, on May 22, 2003. At the beginning of the hearing, Wal–Mart conceded, for the first time, that the injury occurred in the scope and course of Claimant's employment, the workplace injury caused Claimant's hernia and Wal–Mart had notice of the workplace injury. At the hearing, Wal–Mart did not call witnesses or present any medical evi-

---

**2.** In addition to the unsuccessful mediation on April 18, 2002, the parties mediated, unsuccessfully, on August 12, 2002, November 18, 2002, December 16, 2002 and March 10, 2003.

**3.** Wal–Mart neither negotiated nor offered settlement until April 22, 2003, one month before the scheduled hearing.

dence to refute the past medical bills or periods of disability.

On November 20, 2003, the Administrative Law Judge ("ALJ") issued her Award granting most of Claimant's past medical bills, Temporary Total Disability ("TTD") and the percentage of the Permanent Partial Disability ("PPD") Claimant requested. The ALJ's Award did not award interest on the medical bills and TTD. The Award also denied Claimant's request for costs and fees as the "full cost of the proceedings" pursuant to Section 287.560. Without hearing additional oral argument, the Commission affirmed and adopted the ALJ's Award. Claimant appeals the denial of attorney fees and costs.

### Standard of Review

Our review of a workers' compensation award is limited to "a single determination whether, considering the whole record, there is sufficient competent and substantial evidence to support the award." *Hampton v. Big Boy Steel Erection*, 121 S.W.3d 220, 223 (Mo. banc 2003).[4] We will modify, reverse, remand or set aside the award only if the Commission acted in excess of its powers, the award was procured by fraud, the facts found by the Commission do not support the award, or there was not sufficient competent evidence in the record to warrant making the award. *Id.* at 222.

### Discussion

In her sole point on appeal, Claimant contends that the Commission's denial of her request for costs and fees pursuant to Section 287.560 was not supported by sufficient competent and substantial evidence. In support of her contention,

Claimant asserts, *inter alia*, that Wal–Mart's actions were without reasonable grounds in that Wal–Mart: (1) had notice of Claimant's workplace injury and medically diagnosed hernia; (2) failed to make a reasonable investigation; (3) failed to heed the clear opinion of its own medical examiner that Claimant's hernia was work-related, required surgery and justified many weeks of TTD; (4) refused to make an offer in settlement for a period of years and, despite its own medical examiner's opinion, only offered one week of TTD, two weeks prior to the May 22, 2003 hearing; and (5) defended this case through hearing without possessing or offering any contrary medical evidence.

Without citing to any case law to support its position, Wal–Mart responds that it had a reasonable basis to deny Claimant's claim because the hospital records from May 16, 2000 do not contain references to a work-related injury and instead contain a long history of pre-existing abdominal and gynecological problems. Accordingly, Wal–Mart contends that Claimant did not meet her burden of proving causation until she forwarded Dr. Meyers's report in December 2001. In addition, Wal–Mart claims that the medical records it later collected from three unidentified sources contradicted Claimant's contention that she sustained the hernia while working at Wal–Mart.

The ALJ, and ultimately the Commission, agreed with Wal–Mart, finding: "treatment records prior to [December 26, 2001] included statements from [Claimant] of having treatment for similar abdominal problems prior to May 16, 2000; specifically reflected that [Claimant's] symptoms were not as a result of a work related

---

4. Where, as here, the Commission affirms and adopts the ALJ's findings, the Court reviews the ALJ's findings as adopted by the Commission. *Sutton v. Vee Jay Cement Contracting Co.*, 37 S.W.3d 803, 807 (Mo.App. E.D.2000) (overruled on other grounds by *Hampton, supra* ).

accident; and/or gave no indication that [Claimant's] complaints were as a result of a work related event in May of 2001[sic] while performing her duties at Wal–Mart." The ALJ ultimately refused to award the whole cost of the proceedings pursuant to Section 287.560 because Wal–Mart had reasonable grounds upon which to defend this cause in that this case required expert opinion on the question of causation, which Claimant did not provide until December 26, 2001 and that Wal–Mart "timely sought an opinion of their [sic] own which was supplied by Dr. Rogers on October 23, 2002." Our review of the record indicates that this finding is not supported by competent, substantial evidence and is, instead, contrary to the overwhelming weight of the evidence.

▮ According to Section 287.560, the costs associated with a Division or Commission proceeding generally are paid by the state treasury fund. *DeLong v. Hampton Envelope Co.,* 149 S.W.3d 549, 555 (Mo.App. E.D.2004). Section 287.560 also provides an exception to this general rule. That section states, in pertinent part, "[i]f the division or the commission determines that any proceedings have been brought, prosecuted or defended without reasonable ground, it may assess the whole cost of the proceedings upon the party who so brought, prosecuted or defended them." Section 287.560. The whole cost of the proceedings consists of "all amounts the innocent party expended throughout the proceeding brought, prosecuted, or defended without reasonable grounds, including attorney's fees." *De-Long,* 149 S.W.3d at 555.

We are guided in our disposition of this matter by the recent Missouri Supreme Court case of *Landman v. Ice Cream Specialties, Inc.,* 107 S.W.3d 240 (Mo. banc

2003) (overruled on other grounds by *Hampton, supra*). In *Landman,* an employee sustained two separate workplace injuries. *Id.* at 243. In response to the employee's shoulder injury, the employer refused to pay. *Id.* at 250. Ultimately, the employer agreed to pay medical bills and temporary benefits for the shoulder injury if its doctor determined that the injury was work-related. *Id.* Thereafter, employer's medical examiner found that the employee's shoulder injury was work-related and required medical care. *Id.* Despite this evidence, the employer refused to pay and forced a hardship hearing. *Id.*

Warning that the Commission should only order the costs of proceedings under Section 287.560 where the issue is clear and the offense egregious, the Court found that the employer did not have a basis for denying treatment once its own doctor concluded that the injury was work-related. *Id.* Accordingly, the Court held that substantial evidence supported the Commission's finding that employer defended the case without reasonable grounds. *Id.* The Court also held that the employer's defense was without reasonable grounds in that the employer did not put on any evidence to support its defense. *Id.*

Wal–Mart attempts to distinguish the case at hand from *Landman* by stating that, in this case, there has been no egregious or outrageous conduct. We disagree. In front of the ALJ and on appeal, Wal–Mart relies primarily on a standard "Admission Record" form presumably generated by St. Joseph's Hospital on the date of the injury. The form contains the word "NO" in a box captioned "accident wk. rel." The form is not signed by Claimant and there is no indication in the record that she read it.[5] Nor can the form reasonably be described as embodying a doctor's opin-

---

**5.** The Claimant did execute a "Conditions of    Admission Agreement" certifying her under-

ion that Claimant's problems were not caused by a work-related injury. While we acknowledge that the "Admission Record" appears to describe Claimant's injury as not work-related, the absence of a "yes" on the computer-generated form does not negate the probative force of the remaining medical records nor does it negate the egregiousness of Wal–Mart's conduct. Even a cursory review of other medical records generated by St. Joseph's Hospital the same day reveals the CT scan demonstrating a hernia, discharge instructions ordering Claimant to follow-up "with Dr. McCallister re repair of hernia" and the lifting limitations. The diagnosis of a hernia on May 16, 2000 is consistent with Claimant's claim that she injured herself while lifting heavy bags of dog food.

Wal–Mart also relies on medical records other than those generated on May 16, 2000 that demonstrate that Claimant suffered from previous abdominal complaints, including a number of emergency room visits for menstrual-type cramps, a long history of painful gynecological problems, including endometriosis and a prior vaginal hernia repair. However, none of these records either preclude a work-related injury causing a hernia on May 16, 2000 or, more importantly, contradict the objective findings (CT scan) on May 16, 2000 that Claimant suffered a "small midline ventral abdominal hernia." Simply because Claimant had a history of previous gynecological problems and vague abdominal complaints which were noted in the May 16, 2000 records, Wal–Mart cannot justify years of refusing treatment and defending against Claimant's claim where an explanation for her complaints was diagnosed on the date she sought treatment for her injury.

Regardless of what the medical records disclosed, there is no dispute that Claimant's counsel forwarded, and Wal–Mart received, Dr. Meyers's December 26, 2001 report in which Dr. Meyers discussed Claimant's health, the results of the CT scan and the causal connection between Claimant's workplace injury and her hernia.

The record further establishes that, on January 8, 2002, after multiple demands for compensation were unsuccessful, counsel provided notice to Wal–Mart that Claimant signed a lien agreeing to pay Dr. Meyers from any proceeds she later received from Wal–Mart and that Claimant would undergo hernia repair surgery. Despite Dr. Meyers's report and unequivocal conclusion that the hernia was the result of Claimant's workplace injury Wal–Mart again denied Claimant's claim on January 9, 2002.

Moreover, there is no evidence that Wal–Mart even scheduled an examination for Claimant with its own medical examiner until months after two unsuccessful mediations.[6] In fact, the record reflects that it was not until more than eight months after Claimant's emergency surgery that Wal–Mart scheduled Claimant for an appointment with its medical examiner. Claimant did not actually see Wal–Mart's medical examiner until October 22, 2002. In the report prepared the day after that examination, Wal–Mart's examiner, Dr. Rogers, concluded that Claimant's hernia was the result of the workplace injury on May 16, 2000.

standing of various conditions of admission to the hospital including, among other things, a consent to admission and agreement to pay charges incurred for care.

**6.** The first two unsuccessful mediations occurred on April 18, 2002 and August 12, 2002 but the record indicates that it was not until August 22, 2002 that Wal–Mart drafted correspondence informing Claimant's counsel of a September 9, 2002 appointment with its examiner.

Despite Dr. Rogers's confirmation that Claimant's hernia was the result of her workplace injury, Wal–Mart did nothing to further settlement, resume negotiations or promptly resolve this claim. Instead, Wal–Mart waited approximately one month and sent Dr. Rogers a letter urging him to reconsider his opinion regarding causation. When, on November 26, 2002, Dr. Rogers issued a supplemental report stating, "I ... have no changes to my report issued to you on October 22, 2002[,]" Wal–Mart again did nothing to prompt resolution of Claimant's claim.

Even though Wal–Mart was armed with Dr. Rogers's repeated, unequivocal conclusions that Claimant's hernia was the result of the alleged workplace injury, Wal–Mart continued to deny compensation. Moreover, when, almost two months later, Claimant's counsel made an additional written demand for settlement in light of Dr. Rogers's conclusions, Wal–Mart did nothing to resolve this claim. Such actions were both egregious and outrageous.

In the wake of Wal–Mart's continued refusal to resolve this matter despite both its own and Claimant's doctor's unwavering opinion that Claimant's hernia was the result of her workplace injury, counsel for Claimant was compelled to prepare for the May 22, 2003 hearing. In preparation for the hearing, counsel for Claimant deposed both Dr. Rogers and Dr. Meyers. According to the record, at his deposition, Dr. Rogers reiterated his opinion that Claimant's hernia was the result of her workplace injury. Dr. Rogers also testified that Claimant would have reasonably been off work for six weeks following surgery and clarified that he never suggested to Wal–Mart that Claimant should have only been off one week to recover.

There is no dispute that, despite the clear opinion repeatedly articulated by Dr. Rogers in October and November of 2002, Wal–Mart did not make a settlement offer until exactly one month before the hearing the following year, and even then, ignored the opinion of its own medical examiner and offered only: "5% of the body as a whole, one week of TTD ... and payment of the medical bills related to ... hernia repair[.]"

Equally outrageous, at the beginning of the May 22, 2003 hearing, Wal–Mart conceded, for the first time, that the injury occurred in the scope and course of Claimant's employment, the workplace injury caused Claimant's hernia and Wal–Mart had notice of the workplace injury. Like the employer in *Landman*, at the hearing, Wal–Mart did not call witnesses or present any medical evidence to refute the past medical bills or periods of disability and instead pointed only to alleged discrepancies in the medical records. The St. Joseph Hospital medical records do not provide Wal–Mart with a reasonable basis for denying that Claimant's hernia was work-related, particularly after December 26, 2001. *See Landman*, 107 S.W.3d at 250.

In view of the foregoing, the ALJ's findings do not support the denial of costs and fees in the final Award because the record does not support the conclusion that Wal–Mart had reasonable grounds upon which to defend the claim once it received Dr. Meyers's December 26, 2001 report. Certainly waiting almost one full year before having Wal–Mart's own medical expert examine Claimant, and once that examination was completed: ignoring its own physician's conclusions that Wal–Mart was liable; waiting an additional month only to urge its physician to reconsider his unequivocal-albeit unfavorable-opinion; forcing the claim to hearing even when faced with the reaffirmed conclusion of liability from its own expert only to admit knowledge, causation and liability after Claimant incurred the costs of preparation is the very egregious and outrageous conduct contemplated by the Court in *Landman*.

A logical corollary to the Court's determination in *Landman* that the Commission cannot ignore an unreasonable aspect of an employer's defense simply because of the "overall vigor with which a party defended a claim" is that we cannot ignore years of protracted litigation based on a proven groundless defense simply because the defense at one time had arguable merit. *See Landman,* 107 S.W.3d at 250. The mere fact that, prior to December 26, 2001, the issue of causation was arguably in question does not absolve Wal–Mart of its later conduct.

We are mindful that, "[w]here the unreasonable conduct is tempered by reasonable conduct in other aspects of the defense, the remedy is not to simply deny all relief to the innocent party. Instead, the [C]ommission may exercise its discretion to order only a portion of the cost of the proceedings." *Landman,* 107 S.W.3d at 250. Accordingly, in light of the fact that Wal–Mart's conduct prior to its receipt of Dr. Meyers's December 26, 2001 report was arguably reasonable, we reverse the Commission's Award denying costs and attorney's fees from December 26, 2001 forward. We remand to the Commission with the instructions to determine the costs and attorney's fees incurred by the Claimant after December 26, 2001 and to award the amount thereof to Claimant.

### Conclusion

The Commission's Award denying Claimant's request for costs, attorney's fees and interest is reversed and remanded.

KATHIANNE KNAUP CRANE and ROBERT G. DOWD, JR., JJ., Concur.