

# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

| | |
|---|---|
| MICHAEL ERWIN, | ) |
| | ) |
| Appellant, | ) |
| | ) WD87161 |
| v. | ) |
| | ) OPINION FILED: |
| | ) March 4, 2025 |
| MIDWAY ARMS, INC. d/b/a | ) |
| MIDWAY, USA, | ) |
| | ) |
| Respondent. | ) |

**Appeal from the Labor and Industrial Relations Commission**

**Before Division Two:** Janet Sutton, Presiding Judge, and
Alok Ahuja and Mark D. Pfeiffer, Judges

Mr. Michael Erwin ("Employee") appeals from the Final Award of the Labor and Industrial Relations Commission ("Commission"), which adopted most of the findings, conclusions, decision, and award from an Administrative Law Judge ("ALJ") relating to Employee's workers' compensation claim against his employer, Midway Arms, Inc. ("Employer"), but did not adopt the ALJ's decision relating to Employer's responsibility for payment of past medical benefits and the ALJ's sanction assessment relating to

Employer's conduct, which the ALJ deemed to be unreasonable and outrageous. We affirm in part and reverse in part.

## Factual and Procedural History[1]

Employer does not dispute on appeal that, on January 3, 2017, Employee, a twenty-eight-year-old man, suffered a work-related lifting injury and that this injury was the prevailing factor causing Employee's L5-S1 disc herniation, anxiety, and depression. Employer does not dispute on appeal that these conditions necessitated medical treatment in the past—or that such medical treatment was reasonable and medically necessary— and will require future medical care for Employee's life to cure or relieve Employee of the effects of his injuries and disabilities.

Employer does not dispute on appeal that Employee suffered a 30% permanent partial disability ("PPD") to his low back and a 25% PPD to the body as a whole for Employee's psychiatric conditions, all of which the workplace incident was the prevailing factor in causing these disabilities. Employer does not dispute on appeal that it is responsible for temporary total disability ("TTD") benefits that were awarded by the ALJ. Employer does not dispute on appeal that all of the medical care and treatment Employee received was, in fact, reasonable and medically necessary; nor does Employer dispute on appeal that it is responsible for Employee's lifelong medical care related to treating and alleviating the symptoms of his depression, anxiety, and low-back condition.

---

[1] On appeal of a final award of the Commission, "[w]e review the evidence 'in the context of the whole record' rather than in the light most favorable to the award." *City of Clinton v. Dahman*, 669 S.W.3d 142, 148 (Mo. App. W.D. 2023) (quoting *Harris v. Ralls Cnty.*, 588 S.W.3d 579, 597 (Mo. App. E.D. 2019)).

The *only* issues before this Court on appeal relate to Employer's successful contest before the Commission of the ALJ's award ordering it to pay for Employee's past medical expenses and the sanctions for conduct the ALJ deemed to be unreasonable and outrageous in Employer's defense of the underlying claim.

Regarding these remaining issues, the undisputed factual record reflects the following:

On January 3, 2017, Employee suffered a low-back injury while loading a truck with boxes and moving quickly to grab a tote that got off-track on a conveyor belt. He felt a pop in his back and experienced immediate pain in his back and down his legs.

On January 12, 2017, Employee was first seen by Doctor,[2] the authorized treating physician selected by the Employer, who diagnosed a "pretty damn big" L5-S1 herniated disc. After repeated visits with Doctor and undergoing physical therapy, Doctor again saw Employee on June 7, 2017. At that time, Doctor concluded Employee had reached maximum medical improvement ("MMI") and released Employee with a sixty-day prescription for narcotic pain pills and muscle relaxant pills.

On June 29, 2017, Employee's attorney sent a letter to Employer's attorney demanding additional medical treatment for Employee's "still very painful" back and "right leg radiculopathy," urging that "time is of the essence." A week later, on July 6, 2017, Employee's attorney sent another letter to Employer's attorney advising that

---

[2] Pursuant to the directive of section 509.520.1(5) (Supp. IV 2024), we do not use any witness names in this opinion, other than parties to the underlying litigation. All other statutory references are to THE REVISED STATUTES OF MISSOURI (2016), as supplemented through January 3, 2017, unless otherwise indicated.

Employee had become "suicidal from his chronic back pain" and that he urgently needed additional medical treatment for both his back pain and his psychiatric condition that had developed as a result of his back pain.

On July 10, 2017, Employer's attorney acknowledged the "recent demand for treatment" in a return letter, stating "we want to conclude our investigation on this matter. Therefore, we have scheduled your client's deposition[.] At the conclusion of that deposition, we will be able to determine whether we will authorize additional treatment. . . . At the conclusion of your client's deposition, we will make a determination and provide that same to you immediately so that you can prepare the case from your end."[3]

On July 17, 2017, Employee's attorney again sent a demand for immediate medical treatment for Employee's back pain and psychiatric symptoms. This letter, like the others, did not result in Employer's authorization of the requested treatment. Employee's deposition was then taken on August 7, 2017.

Thereafter, on August 21, 2017, Employer's attorney sent a letter to Employee's attorney stating Employee was at MMI and that Employer's attorney was "at the conclusion of [its] collection of evidence." Respondent stipulated in its appellate brief filed with this Court that the August 21, 2017 letter represented "*Respondent's decision*

---

[3] Although Employer now claims that Employee's demand for additional medical treatment was insufficient in June-July 2017, there was no confusion that Employee was, in fact, demanding additional medical treatment; nor is there any confusion that Employer communicated its refusal to provide such requested treatment in its letter of August 21, 2017.

4

*to not authorize further medical treatment* based on the outcome of Claimant's deposition."

Doctor would later testify at the hearing before the ALJ that the Employer never notified him of Employee's attorney's letters detailing Employee's worsening condition, new symptoms, and requests for additional medical care. He would further testify that, had he been aware of the information communicated in those letters, he would have wanted to see Employee "immediately"—especially because of the new complaints of suicidal ideation.

*After* Employer denied further medical treatment in the August 21st letter, Employee made his own medical treatment arrangements by scheduling appointments for further treatment of his orthopedic and psychiatric medical conditions. This self-guided course of treatment culminated in surgery on his low back and psychiatric treatment for his anxiety and depression. The unpaid medical bills for this self-guided medical treatment, at the time of hearing before the ALJ, was $114,950.23.

For its part, Employer not only refused to authorize further medical treatment on August 21, 2017—without even consulting its own designated treating physician—but also only offered 7.5% PPD to settle the workers' compensation case, even though its own designated treating physician opined that the impairment rating was 10% PPD. Subsequently, Employer extended the full 10% PPD rating as a settlement to Employee and requested, on numerous occasions, that Employee's attorney provide treatment records from the doctors whom Employee was seeing for additional medical treatment.

Employee's attorney did not provide such medical records until October 16, 2018, after the lumbar surgery had been performed.

On July 8, 2020, Doctor reevaluated Employee and concluded Employee's work-related activity on January 3, 2017, was the prevailing factor in Employee's disk herniation. However, in his final report on August 18, 2020, Doctor reversed this opinion and stated he did not believe Employee's work-related activity was a prevailing factor in Employee's disk herniation but rather that the injury was caused by pre-existing degenerative changes as shown by medical imaging performed within two weeks of the original injury back in January 2017. This was Doctor's first mention of any pre-existing degenerative conditions affecting Employee's low back. In his subsequent deposition, Doctor retracted much of the August 18th report's conclusions. In the deposition, he ultimately concluded that it was reasonable for Employee to seek treatment elsewhere after Employer refused to authorize further medical treatment.

The ALJ conducted a hearing on July 20, 2022, and ordered the PPD awards, TTD award, and future medical award, ordered Employer pay $114,950.23 for denied past medical expenses, and sanctioned Employer for its unreasonable and outrageous conduct by ordering the payment of "25% of all amounts awarded herein ($189,607.37), or $47,401.84, plus costs of $11,979.52, for total sanctions in the amount of $59,381.36."

Employer administratively appealed to the Commission, who reversed the ALJ's award as to Employer's responsibility for payment of past medical expenses—concluding that Employee did not "sufficiently notify Employer" of the need for additional medical treatment—and reversed the ALJ's award of sanctions—concluding that Employer's

6

conduct did not fit the "unreasonable and outrageous" standard for awarding such sanctions. However, in all other respects, the Commission adopted the findings, conclusions, decision, and award of the ALJ.

Employee timely appealed the Commission's ruling, seeking as relief from this Court that we reinstate the ALJ's award relating to past medical treatment and sanctions. For reasons explained in today's ruling, we reinstate the ALJ's award for past medical treatment but reject Employee's request to reinstate the ALJ's award for sanctions.

## Standard of Review

In reviewing a workers' compensation final award, we review the findings and award of the Commission rather than those of the [Division]. However, where the Commission affirms and adopts the findings and conclusions of the Division, we necessarily review the Division's findings and conclusions, as adopted by the Commission.

Our standard of review is controlled by section 287.495.1 which provides:

The court, on appeal, shall review only questions of law and may modify, reverse, remand for rehearing, or set aside the award upon any of the following grounds and no other:

(1) That the commission acted without or in excess of its powers;

(2) That the award was procured by fraud;

(3) That the facts found by the commission do not support the award;

(4) That there was not sufficient competent evidence in the record to warrant the making of the award.

We review, therefore, questions of law de novo, and without deference to the Commission. We review factual findings by examining the whole record to determine if it contains sufficient competent and substantial evidence to support the award, i.e. whether the award is contrary to the overwhelming weight of the evidence.

7

*Tillotson v. St. Joseph Med. Ctr.*, 347 S.W.3d 511, 516 (Mo. App. W.D. 2011)

(citations and internal quotation marks omitted). "When the facts pertinent to the

issue on appeal are not in dispute, the issue is a question of law that is reviewed

*de novo.*" *Stegman v. Grand River Reg'l Ambulance Dist.*, 274 S.W.3d 529, 532-

33 (Mo. App. W.D. 2008); *see also Munson v. Div. of Emp. Sec.*, 323 S.W.3d 112,

114-15 (Mo. App. W.D. 2010) ("[W]e owe no deference to the Commission's

conclusions of law or application of the law to the facts.").

## Points I and II

Employee's first two points relating to Employer's responsibility to pay for

Employee's past medical treatment assert that the facts pertinent to the issue on appeal

are not in dispute and that the Commission's application of law to the undisputed facts is

erroneous. We agree.

Medical care compensable under Missouri's Workers' Compensation Law is

governed by section 287.140.1, which provides in relevant part:

> [T]he employee shall receive and the employer shall provide such medical, surgical, chiropractic, and hospital treatment, including nursing, custodial, ambulance and medicines, as may reasonably be required after the injury or disability, to cure and relieve from the effects of the injury. If the employee desires, he shall have the right to select his own physician, surgeon, or other such requirement at his own expense.

"Medical aid is one component of the compensation an injured worker is entitled to

receive. . . . This includes treatment that gives comfort or relief from pain even though a

cure is not possible." *Abt v. Miss. Lime Co.*, 420 S.W.3d 689, 704 (Mo. App. E.D. 2014)

(internal citations omitted). Medical treatment "should not be denied simply because a

8

claimant may have achieved maximum medical improvement." *Williams v. City of Ava*, 982 S.W.2d 307, 311-12 (Mo. App. S.D. 1998), *overruled on other grounds by Hampton v. Big Boy Steel Erection*, 121 S.W.3d 220, 226 (Mo. banc 2003).

"As a general rule, the employer has control over the selection of the claimant's medical providers." *Abt*, 420 S.W.3d at 704. If the employee wishes to select their own physician, they may do so, but the employer will no longer be liable for the cost of employee's medical care. *Kent v. NHC Healthcare*, 621 S.W.3d 596, 610 (Mo. App. E.D. 2021) (citing § 287.495.1). However, when "the employer has notice that the employee needs treatment, or a *demand is made on the employer to furnish medical treatment, and the employer refuses or fails to provide the needed treatment*" the employer will be held liable for any reasonable and necessary medical treatment procured by the employee. *Lyman v. Mo. Emps. Mut. Ins. Co.*, 407 S.W.3d 130, 134 (Mo. App. S.D. 2013) (emphasis added) (quoting *Poole v. City of St. Louis*, 328 S.W.3d 277, 291 (Mo. App. E.D. 2010)); *accord Martin v. Town & Country Supermarkets*, 220 S.W.3d 836, 844 (Mo. App. S.D. 2007) ("If the employer is on notice that the employee needs treatment and fails or refuses to provide it, the employee may select his or her own medical provider and hold the employer liable for the costs thereof."); *see also Abt*, 420 S.W.3d at 704 ("While the employer has the right to name the treating physician, it is well established that the employer may waive that right by failing or neglecting to provide necessary medical aid.").

In this case, the ALJ and the Commission both concluded that the treatment in question was both medically necessary and causally connected to the January 3, 2017

9

injury. That conclusion is not challenged on appeal. Thus, the only relevant issues before this Court are whether a demand for further treatment was made to the Employer; whether the demand was refused or ignored; and if the demand was refused or ignored, whether Employee was required by law to update Employer on the course of the additional treatment.

Upon a review of the record, we find that Employee made multiple demands to the Employer to provide further medical aid and that Employer responded to those demands by both ignoring and, later, explicitly refusing to authorize additional medical treatment.

*Employee's Demand*

Employee, through his attorney, made three separate demands for treatment within the letters dated June 29, 2017; July 6, 2017; and July 17, 2017. In these letters, Employee's attorney made an unmistakable demand: "my client respectfully requests additional medical care." Furthermore, the demands were supported by recitation of specific symptoms that Employee sought to treat: "[H]is back is still very painful with right leg radiculopathy"; "my client needs additional medical care for his back pain and psychiatric care as well"; and "[Employee] is suicidal from his chronic back pain." Furthermore, if the recitation of these concerning symptoms did not plainly convey the significant, ongoing deterioration of Employee's quality of life as a result of his need for further treatment, each letter urged: "time is of the essence." These letters plainly satisfy Employee's requirement to demand or otherwise sufficiently notify Employer of the necessity for additional medical treatment from Employer.

10

Nonetheless, Employer convinced the Commission that, because Employee failed to provide medical evidence supporting his need for additional medical treatment, Employee's demand was not valid, especially in light of Doctor's written report stating the Employee had reached MMI. But under Missouri law, medical evidence is *not* required to accompany a claimant's demand for further treatment, nor is it required to place an employer on notice of a claimant's need for further treatment.

In *Abt v. Mississippi Lime Co.*, the claimant Abt both reported to the employer of his ongoing back pain and then reported to the employer that the employee's selected doctor refused to see the employee because his back pain was related to a work injury. *Abt*, 420 S.W.3d at 704. The *Abt* court found this placed the employer on notice "that the claimant required additional medical aid," even though Abt did not provide a medical report and even though Abt did not specify the additional treatment he sought. *Id.* Because the employer failed to provide any further medical aid, "[t]he claimant was then free to select his own physicians to render medical aid, and the employer [was held] responsible for the cost of that treatment." *Id.*

Similarly, in *Martin v. Town & Country Supermarkets*, the claimant Martin injured her back while at work. *Martin*, 220 S.W.3d at 839. Martin was initially diagnosed with a mild herniated disc and a mild back sprain and released to return to work. *Id.* However, upon returning to work, Martin experienced unbearable back pain. *Id.* Without any further medical examination, Martin requested permission to see an orthopedic surgeon. *Id.* Martin's employer refused to send her to the requested surgeon or any other physician for further treatment. *Id.* On appeal from the Commission's final

award, the *Martin* court held that "[w]hen Martin requested authorization to be treated by [the orthopedic surgeon], Employer was placed on notice that Martin was in need of additional medical aid." *Id.* at 848. Thus, upon refusal of that aid, "Martin was free to procure necessary treatment on her own and obtain an award against Employer for the reasonable cost thereof," even though she did not provide her employer medical records justifying her demand for additional treatment. *Id.* Ultimately, the *Martin* court concluded that the employer was responsible for the reasonable cost of its employee's surgery. *Id.*

Employer cites to *Kent*, 621 S.W.3d at 610-11, in an effort to demonstrate that any demand for additional medical treatment must be accompanied by medical evidence or opinion. However, the facts in *Kent* are fundamentally distinct from the present case. The claimant in *Kent* never demanded his employer to authorize further medical treatment; instead, Kent simply sought out treatment on his own without providing any notice whatsoever to his employer:

> The record unambiguously shows that at no time while Kent sought medical care and treatment from Dr. Parks or anyone else, did Kent make any demand on NHC Healthcare or notify NHC Healthcare of his desire to continue medical treatment with these professionals. To the contrary, the record clearly shows that Kent intentionally declined to notify NHC Healthcare of his intent to seek continuing medical care for his reported back pain following his termination of employment.

*Id.* at 612. Although Kent failed to provide any *actual* notice of his need for further medical treatment, the reviewing ALJ nonetheless awarded him compensation for his past medical expenses under the theory of *constructive* notice—that Kent's employer was placed on notice of Kent's need for additional treatment when he filed a claim for

12

compensation that included an allegation that he "is in need of . . . additional medical treatment." *Id*. at 611. The Eastern District of this Court expressly rejected this theory of constructive notice, instead deferring to the Commission's finding that Kent had failed to establish either that Kent made a demand for further medical treatment that was refused by his employer or that Kent's employer was otherwise placed on notice of Kent's need for further treatment and failed to provide it. *Id*.

While Employer is correct that the *Kent* court concluded that the employee's notice was insufficient, it did so because Kent failed to provide *any* notice to his employer, not because he failed to provide medical records or a medical opinion justifying his demand. Here, unlike the employee in *Kent*, Employee made multiple demands for additional treatment to Employer *before* seeking any additional treatment on his own; thus, Employee did not rely on the rejected theory of constructive notice and instead relied on his direct demands to Employer, which placed Employer on actual notice akin to *Abt* and *Martin*.[4]

---

[4] Employee actually provided *more* notice than was present in either *Abt* or *Martin*, where the claimants each made fewer than three requests for further treatment. *Martin v. Town & Country Supermarkets*, 220 S.W.3d 836, 839 (Mo. App. S.D. 2007) ("Martin asked for permission to see Dr. George Schoedinger, an orthopedic surgeon, but Employer refused to authorize care by this physician. Employer also failed to send Martin to any other physician for treatment of these symptoms."); *Abt v. Miss. Lime Co.*, 420 S.W.3d 689, 704 (Mo. App. E.D. 2014) ("The claimant testified that he reported to the employer his ongoing back pain following the 2001 primary injuries. . . . The claimant tried on his own to see a Dr. Maynard for his back pain. Dr. Maynard, however, refused to examine the claimant upon learning that the claimant's pain was related to a work injury. The claimant reported Dr. Maynard's refusal to see him to the employer's representative . . . . Despite these reports, the employer never authorized the claimant to obtain any further treatment.").

Furthermore, Doctor's previous opinion that Employee had achieved MMI did not raise the level of proof required for Employee to demand further treatment. Essentially, Employer argues that the Employee was required to seek *unauthorized* treatment to dispel Doctor's opinion on MMI before it would consider a demand for further *authorized* treatment. There is no such requirement in the law. In fact, the Commission itself has rejected this argument in the past:

> *We reject employer's suggestion that an injured worker must prove the compensability of her injury before employer has any obligation to provide medical examination or treatment.* It is contrary to the express language of § 287.140 RSMo . . . . The statute says an employer shall provide the medical services listed therein and the statute does not make employer's obligation to provide medical service contingent upon a medical opinion (or, worse yet, an award) finding the injury compensable. It would be absurd, for example, if the legislature intended that an employer must provide ambulance transportation to a critically injured worker, but only after the critically injured worker provided employer with a medical opinion that the injury giving rise to the need for ambulance transportation was work-related.

*Nouraie v. Mo. Baptist Med. Ctr.*, No. 10-111746, 2013 WL 1093332, at *4 (Mo. Lab. Ind. Rel. Com. Mar. 13, 2023) (emphasis added). Although a ruling from the Commission does not constitute binding precedent in this Court, Missouri courts have given these decisions respectful consideration in accordance with their persuasiveness. *N.E. Osteopathic Hospital v. Keitel*, 355 Mo. 740, 747 (Mo. 1946) ("Administrative decisions are entitled to respectful consideration; but, being ex parte, administrative decisions (and opinions and rules) do not have the convincing weight of adjudications arrived at in sharply contested judicial proceedings and are not controlling."); *see State ex rel. 400 N. Lindbergh Assocs. v. Ciarleglio*, 807 S.W.2d 100, 105 (Mo. App. E.D.

14

1990) ("The interpretation of a statute by those charged with its execution, while not controlling, is entitled to consideration."); *Burke & Sons Oil Co. v. Dir. of Revenue*, 757 S.W.2d 278, 280 (Mo. App. W.D. 1988) (citations omitted) ("Burke & Sons' brief cites us to an earlier case before the administrative hearing commission where the circumstances were similar to this case. Prior decisions of the AHC are of no precedential value to appellate courts, but the comparison is of passing interest."). We find the commentary by the Commission in its *Nouraie* ruling to be instructive. Quite simply, it is illogical to require a claimant to obtain *unauthorized* medical treatment for the purpose of proving to an employer that it must *authorize* further medical treatment.[5]

Here, Employee made a valid demand for further treatment, which specifically identified new and worsening symptoms. Therefore, if Employer refused this demand, Employer's financial responsibility was triggered for any additional medical treatment

---

[5] Beyond the fact that a medical opinion is not required before an employer can be "sufficiently" placed on notice of a demand for additional medical treatment, Employer's reliance upon Doctor's MMI opinion was not reasonable where Employer had failed to forward to Doctor the letters from Employee's counsel evidencing new symptoms. Instead of allowing Doctor to consider Employee's complaints of specific new symptoms and corresponding demands for further treatment, Employer exercised its own—ultimately incorrect—lay judgment to conclude that the complaints were not medically significant enough to forward to Doctor. As Employer highlights in its own brief, such lay medical judgment was problematic: "[m]edical causation, which is not within common knowledge or experience, must be established by scientific or medical evidence showing the relationship between the complained of condition and the asserted cause. Medical opinions addressing compensability and disability shall be stated within a reasonable degree of medical certainty." *Beatrice v. Curators of Univ. of Mo.*, 438 S.W.3d 426, 435 (Mo. App. W.D. 2014) (citations and internal quotations omitted). Thus, Employer did *not* rely on Doctor's opinion to deny Employee treatment for his new symptoms; instead, it relied unilaterally on its own untrained lay opinion to decide that Employee's worsening condition and new symptoms did not necessitate further medical treatment.

obtained by the Employee that was demonstrated to be reasonable and medically necessary.

*Refusal or Failure by Employer to Provide Additional Medical Treatment*

Because Employee's letters constituted a demand for further treatment, Employer faced a decision upon receipt: (1) refuse to authorize or otherwise ignore Employee's demand for further treatment and be financially responsible for *medical treatment* sought by Employee later deemed reasonable and medically necessary or (2) grant Employee's request and retain control over the course of Employee's treatment.

Employer deferred its decision until after it conducted a deposition of Employee. After taking Employee's deposition, Employer sent the August 21, 2017 letter that: (1) stated Employer did not need to collect any additional evidence regarding Employee's claim, which would include the medical reports of the doctors treating Employee's new symptoms; (2) reiterated Employer's position that Employee had reached MMI as of June 7, 2017, based on Doctor's report; and (3) offered a settlement for a *lower disability amount* than what Doctor's report had specified. Employer characterizes the August 21st letter as a blanket rejection of any and all further requested medical treatment in its appellate brief: "On August 21, 2017, Respondent sent a letter to Claimant's attorney advising of Respondent's decision to not authorize further medical treatment based on the outcome of Claimant's deposition." Because this fact is not in dispute on appeal, we accept it as true. *See Perry v. State*, 11 S.W.3d 854, 862 n.5 (Mo. App. S.D. 2000) (citing *In re Marriage of Balough*, 983 S.W.2d 618, 620 (Mo. App. S.D.

16

1999)) ("Where a statement of fact in one party's brief is conceded to be true in the adversary's brief, this court may consider it as though it appears in the record.").

Despite Employer's refusal of Employee's demand, Employer argues that, because Employee did not communicate with Employer regarding Employee's condition and medical care, Employer is not obligated to cover the cost of such care. We disagree.

Once an employee has made a demand and that demand has been refused, the claimant is free to choose their own medical provider and is no longer required by law to keep their Employer informed of their care. *Abt*, 420 S.W.3d at 704 ("Our research has revealed no case providing that a claimant must make repeated requests for treatment or provide the employer with notice multiple times that the claimant needs further treatment.").

Because Employer's August 21st letter constituted a complete and unconditional refusal of Employee's demand for further medical care, Employee became free to select his own doctor for further treatment of the work-related injury, and Employer became liable for that treatment—so long as the treatment was later deemed *reasonable and medically necessary*. *See Lyman*, 407 S.W.3d at 134 (quoting *Poole*, 328 S.W.3d at 291) ("[T]he employer is held liable for medical treatment procured by the employee only when . . . a demand is made on the employer to furnish medical treatment, and the employer refuses or fails to provide the needed treatment."); *Martin*, 220 S.W.3d at 848 (emphasis added) (citations omitted) ("Martin was free to procure *necessary* treatment on her own and obtain an award against Employer for the *reasonable* cost thereof.

17

Employer stipulated that [surgeon]'s charges were reasonable. Therefore, the Commission did not err in awarding Martin the cost of that medical treatment.").

Because the parties do not dispute the Commission's conclusion that all of the additional treatment Employee received after Employer's refusal was reasonable and medically necessary, Employer should have been held liable to Employee for the full cost of that treatment.

Therefore, we find the Commission's application of law to the undisputed facts erroneous. Points I and II are granted, and the Commission's denial of past medical benefits is reversed and the ALJ's decision as to Employer's financial responsibility for Employee's past medical benefits is reinstated.

### Point III

> Under the statute [287.560], the Commission *may*, in its discretion, assess the costs of a proceeding against a party who unreasonably defended the proceeding. The Commission should exercise this power, however, with great caution and only when the case for costs is clear and the offense egregious. Our proper review is for abuse of discretion, which generally means a decision so clearly against the logic of the circumstances, and so unreasonable and arbitrary, that it shocks one's sense of justice and indicates a lack of careful deliberate consideration.

*Sickmiller v. Timberland Forest Prods.*, 407 S.W.3d 109, 119 (Mo. App. S.D. 2013) (citations and internal quotation marks omitted). "The commission should only exercise its discretion to order the cost of proceedings under section 287.560 where the issue is clear and the offense egregious." *Landman v. Ice Cream Specialties*, 107 S.W.3d 240, 250-51 (Mo. banc 2003), *overruled on other grounds by Hampton v. Big Boy Steel Erection*, 121 S.W.3d 220, 224 (Mo. banc 2003). "Because the Commission's statutory

power to award costs is purely discretionary, the decision to decline an award of fees *is not reviewed for whether the decision is supported by substantial evidence*, but whether the Commission abused its discretion when rendering the decision." *Donnell v. Trans State Airlines*, 667 S.W.3d 137, 143 (Mo. App. E.D. 2022) (emphasis added) (citing *Nolan v. Degussa Admixtures, Inc.*, 276 S.W.3d 332, 335 (Mo. App. S.D. 2009)).

The ALJ cited two instances of what it deemed outrageous conduct justifying an award of costs and attorney fees to Employee, and Employee relies on these same two incidents to support his request on appeal for the reinstatement of the ALJ's award of costs and attorney's fees:  (1) Employer's refusal to consult with Doctor before denying Employee's demand for additional medical care and subsequent settlement offer for less than Doctor's opinion on Employee's disability rating; and (2) Employer's attempt to claim at the hearing before the ALJ that Employee's injuries were not work-related and were instead the result of a degenerative condition.

In its final award, the Commission provided three reasons for reversing the ALJ's award of costs and attorney's fees:  (1) Doctor's opinion that Employee had reached MMI was a valid basis for denying additional treatment; (2) Employer attempted to follow up with Employee's self-guided medical care, but Employee refused to cooperate; and (3) although the Commission agreed that the Doctor's sudden reversal of his opinion on the work-related nature of Employee's injury was not credible, the Commission noted that this new opinion was still a medical opinion that placed causation at issue for the hearing.

19

On appeal, Employee cites to precedent claiming that the Commission abused its discretion in declining to award costs and fees under similar factual and procedural circumstances. We disagree.

In *Landman*, the procedural circumstance was that the Missouri Supreme Court *upheld* an award of costs and attorney fee sanctions ordered by the Commission against an employer for unreasonably contesting the work-related nature of employee's injury. *Landman*, 107 S.W.3d at 250. The Commission found that Landman's employer acted unreasonably when it argued at a hearing before the ALJ that Landman's injury was not work-related. *Id.* Landman's employer pressed this argument even after *its own medical examiner* concluded that Landman's injury was work-related; even though it *promised* to abide by the medical examiner's conclusion in exchange for Landman not immediately seeking a hearing; and despite having *no evidence whatsoever* to dispute the conclusion of the medical examiner. *Id.* The Missouri Supreme Court cautioned that such an award should be reserved for clear and egregious conduct but deferred to the Commission's discretionary ruling that employer acted egregiously after finding that the factual basis for the award was supported by the record. *Id.* at 250-51 ("The evidence in this case supports the commission's conclusions and is not against the overwhelming weight of any contradictory evidence.").

In *Monroe v. Wal-Mart Assocs., Inc.*, 163 S.W.3d 501 (Mo. App. E.D. 2005), the court reversed the Commission's decision to decline Monroe's request for an award of costs and attorney's fees. *Monroe*, 163 S.W.3d at 509. Monroe suffered an injury while lifting a fifty-pound bag. *Id.* at 503. Monroe was allowed to leave work to go to an

20

emergency room for treatment and was treated for a hernia. *Id.* However, Monroe's employer refused to pay for any of Monroe's treatment, claiming that Monroe's injury was not work-related. *Id.* at 503-04. To support its contention, Monroe's employer cited Monroe's prior medical records and an initial intake form from Monroe's emergency room visit, which indicated Monroe's visit was not work-related. *Id.* at 506-07. But, no evidence suggested that the intake form was a medical opinion or even that Monroe had any opportunity to review the form to verify its accuracy. *Id.* Nonetheless, Monroe's employer maintained its position that Monroe's injury was not work-related even after two doctors, *including employer's own medical examiner*, concluded Monroe's injury was work-related. *Id.* at 507-08. Monroe's employer refused to take any meaningful steps towards reaching a settlement until it came before an ALJ for a hearing. *Id.* at 508. At the hearing, which came over three years after Monroe's injury, the employer *conceded* the injury was work-related and provided no medical evidence to justify its years of defending the claim without justification. *Id.* Citing the employer's utter lack of evidence to support its position once a doctor opined that Monroe's injury was work-related, the *Monroe* court found employer's conduct unreasonable and egregious and remanded the case with instructions to award costs and attorney's fees incurred after Monroe's employer first received a medical opinion that Monroe's injury was work-related. *Id.* at 509.

In contrast to the employers in both *Landman* and *Monroe*, Employer presented *some medical evidence* supporting its defense: Doctor's belated and self-contradictory testimony that Employer's work-related injury was actually caused by a degenerative

21

condition. Although Doctor was a moving target on his medical opinions, they were, nonetheless, formal medical opinions certified by a licensed doctor. Employer was, therefore, entitled to rely upon them—even though neither the ALJ nor the Commission credited Doctor's new opinion and even though the new opinion on causation directly contradicted the opinion Doctor had previously held for three years prior. Thus, unlike the employers in *Landman* or *Monroe*, Employer had *some* basis for contesting the issue of causation at trial.

Turning to the other conduct of Employer cited by Employee, we agree that Employer initially acted unreasonably in relying on Doctor's first report to deny future medical care without first notifying Doctor of Employee's new symptoms. But, Employer did make *some effort* to show concern for Employee by repeatedly contacting Employee's attorney to request additional medical records and status updates regarding Employee. The Commission concluded that *Employee's* attorney acted unreasonably at this point by refusing to provide any medical records or physician recommendations until *after* Employee's surgery and other medical treatment had been provided and expenses incurred, leaving Employer no opportunity to reconsider its previous refusal to authorize or participate in Employee's treatment. We defer to the Commission's finding that both parties acted unreasonably. *See Donnell*, 667 S.W.3d at 144 ("We defer to the Commission's factual finding that unreasonable conduct by both parties—including Donnell—contributed to the delay.").

Under these circumstances, we find no abuse of discretion in the Commission's conclusion that Employer's conduct did not rise to the level of conduct necessitating sanctions.

Point III is denied.

## Conclusion

The Commission's reversal of the ALJ's award of $114,950.23 for past medical care is reversed and that award from the ALJ's ruling is reinstated. The remainder of the Commission's final award is affirmed.

_Mark D. Pfeiffer_ _____
Mark D. Pfeiffer, Judge

Janet Sutton, Presiding Judge, and Alok Ahuja, Judge, concur.